United States Court of Appeals
Fifth Circuit

**F I L E D**

June 26, 2003

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-21137

_____

C. A. DICKERSON; ROLAND R. PENNINGTON;
DAVID VUKOVIC,

Plaintiffs-Appellees,

v.

DOYNE BAILEY, in his official capacity
as administrator of the Texas Alcoholic
Beverage Commission,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Southern District of Texas, Houston Division

_____

Before WIENER and CLEMENT, Circuit Judges, and LITTLE[*], District
Judge.

WIENER, Circuit Judge:

Defendant-Appellant Doyne Bailey, in his official capacity as

Administrator of the Texas Alcoholic Beverage Commission (the

"Administrator"), appeals from the district court's grant of

summary judgment to Plaintiffs-Appellees C.A. Dickerson et al.

("Plaintiffs"). Plaintiffs have challenged portions of the Texas

Alcoholic Beverage Code ("TABC") that regulate the sale and

_____

[*] District Judge of the Western District of Louisiana, sitting
by designation.

importation of wine by citizens of the State of Texas from out-of-state vintners, contending that Texas violates the Commerce Clause by economically discriminating against out-of-state wineries in favor of its own in-state wineries. As we determine that summary judgment was properly granted and that the district court's ordered remedy was appropriate in light of its judgment, we affirm.

## I.
## FACTS AND PROCEEDINGS

Plaintiffs are oenophiles who reside in the Houston area. In April 1999, they brought suit under 42 U.S.C. § 1983 against the Administrator, contending that particular provisions of the TABC, which he and the Alcoholic Beverage Commission enforce, violate the Commerce Clause of the United States Constitution.[1] The uncontested predicate for Plaintiffs' lawsuit was their attempt to purchase wines directly from Wiederkehr Wine Cellars, a small vintner in Arkansas, and have it shipped directly to Plaintiffs in Texas. Because of the small size of the winery, Wiederkehr has been unable to secure importation and distribution of its wines in Houston, Texas, through the permitted wholesaler. Plaintiffs also purchase wine while visiting out-of-state wineries, which produce wine that is unavailable in Texas; and Plaintiffs' efforts to have their purchases shipped directly to their homes are frustrated by Texas's prohibition against out-of-state wineries selling and

---

[1] See Dennis v. Hughes, 498 U.S. 439, 446 (1991) (holding that "the Commerce Clause confers 'rights, privileges, or immunities' within the meaning of § 1983").

shipping directly to Texas consumers.[2] Wineries in Texas, however, are permitted to sell and ship wine directly to Texas consumers.[3] Thus, claim Plaintiffs in their complaint, Texas's prohibition against out-of-state wineries shipping their products directly to Texas consumers constitutes a "significant burden on interstate commerce and bars them and all other Texans from engaging in their fundamental liberty of interstate commerce."

After receiving cross-motions for summary judgment by the parties, the district court granted summary judgment to Plaintiffs (and, accordingly, denied summary judgment to the Administrator). In its extensive Memorandum and Order the district court thoroughly surveyed the extant case law, then held that (1) TABC § 107.07(a) and § 107.07(f) facially violate the Commerce Clause, and (2) these provisions are not saved by the powers granted to Texas under § 2 of the Twenty-First Amendment because their purpose is to protect in-state economic interests, rather than promoting the legitimate state policy of temperance. The Administrator filed a motion for reconsideration.

Shortly thereafter, the Seventh Circuit issued its decision in Bridenbaugh v. O'Bannon, reversing a district court's ruling in the

---

[2] See, e.g., TEX. ALCO. BEV. CODE ANN. § 107.07(f) (Vernon 2001) (prohibiting any direct shipments to a Texas resident by an out-of-state producer or seller of alcoholic beverages).

[3] See, e.g., TEX. ALCO. BEV. CODE ANN. § 16.01(a)(4) (permitting in-state wineries to sell directly to Texas consumers up to 25,000 gallons of wine annually).

Northern District of Indiana that the district court here had relied on in its summary judgment order.[4] In light of the Seventh Circuit's Bridenbaugh decision, the district court granted the Administrator's motion for reconsideration. The court also granted Plaintiffs' motion to amend their complaint, in which they maintained that the Administrator raised new arguments in his motion for reconsideration. All parties were ordered to rebrief their motions for summary judgment.

In his second motion for summary judgment, the Administrator relied heavily on Bridenbaugh and also insisted for the first time that in-state and out-of-state vintners are treated equally under § 107.07. In their amended complaint and new summary judgment motion, Plaintiffs urged that Texas's discriminatory treatment of out-of-state wineries was explicitly revealed by the Texas legislature's recent enactment of the Texas Wine Marketing Assistance Program Act ("Texas Wine Marketing Act"),[5] effective September 1, 2001. Plaintiffs also challenged the Administrator's new claim of equal treatment for in-state and out-of-state wineries under § 107.07, specifically highlighting § 107.12 as facially discriminatory in favor of in-state wineries at the expense of out-

_____

[4] Bridenbaugh v. O'Bannon, 78 F. Supp. 2d 828 (N.D. Ind. 1999), rev'd, Bridenbaugh v. Freeman-Wilson, 227 F.3d 848 (7th Cir. 2000).

[5] TEX. ALCO. BEV. CODE ANN. §§ 110.001–110.055.

4

of-state wineries.[6]  Finally, Plaintiffs expanded the scope of the relief they sought, requesting that numerous "duplicative" statutes in the TABC be adjudged as unconstitutional, either facially or as applied.[7]

In its second, and equally comprehensive, Memorandum and Order, the district court acknowledged that its prior summary judgment ruling and the Bridenbaugh decision "motivated both sides to reframe their claims."[8]  After exhaustively reviewing the case law and the parties' new arguments, though, the district court again granted summary judgment in favor of Plaintiffs, determining that (1) § 107.07(f) is facially unconstitutional, and (2) §§ 6.01, 11.01, 37.07, 107.05(a), and 107.07(a) are unconstitutional as applied to Plaintiffs.  The district court based this conclusion on the same reasoning as in its first summary judgment order: These statutes preclude Plaintiffs from purchasing wine directly from out-of-state wineries and having it shipped directly to their Texas

---

[6] See TEX. ALCO. BEV. CODE ANN. § 107.12 (providing that a person who purchases wine at a winery in Texas may have it shipped directly to a residence in Texas).

[7] See TEX. ALCO. BEV. CODE ANN. § 6.01 (permitting, inter alia, only importation of alcoholic beverages by persons who first obtained a permit or license); § 11.01 (prohibiting the importation of liquor, including wine, without a permit); § 37.03 (requiring a seller's permit for "any distillery, winery, importer, broker, or person who sells liquor to permittees authorized to import liquor into [Texas], regardless of whether the sale is consummated inside or outside the state"); § 107.05(a) (prohibiting the import or delivery of liquor to anyone not authorized to import it).

[8] Dickerson v. Bailey, 212 F. Supp. 2d 673, 675 (S.D. Tex. 2002).

5

residences, but does allow them to purchase wine directly from in-state wineries and have it shipped directly to them in Texas. This is the kind of economic discrimination, the court explained, that is proscribed by the Commerce Clause: The purpose of the state scheme is economic discrimination against out-of-state interests or, depending on one's point of view, economic protectionism of in-state competitors. Accordingly, the district court held that the subject provisions of the TABC are not saved by the powers granted to the states under § 2 of the Twenty-First Amendment to regulate alcohol. The district court enjoined the Administrator from enforcing the challenged statutory provisions because they "depriv[e] Plaintiffs . . . of their right to engage in interstate commerce by importing out-of-state wine for personal consumption without the threat of criminal punishment if they violate the statute[s]."[9]

The Administrator again filed a motion for reconsideration. In response, the district court modified its second summary judgment order, ruling that § 107.07(f) is unconstitutional only as applied to the Plaintiffs, not facially. The court also stayed its injunction pending any appeal to us. In all other respects, the second summary judgment decision remained unchanged. The

---

[9] Id. at 696 (enjoining enforcement of §§ 6.01, 11.01, 37.03, 107.05(a), 107.07(a), and 107.07(f)). See TEX. ALCO. BEV. CODE ANN. § 1.05(a) (providing that a violation is a misdemeanor that is "punishable by a fine of not less than $100 nor more than $1,000 or by confinement in the county jail for not more than one year or by both").

Administrator timely filed a notice of appeal.

## II.
## ANALYSIS

On appeal, the Administrator urges us to hold that the provisions of the TABC that are challenged by Plaintiffs are sanctioned by the power granted to the states under § 2 of the Twenty-First Amendment. Under controlling precedent in this circuit and in the Supreme Court, we are required to assess first whether these statutes violate the Commerce Clause, and, if we so determine, we must then ask whether they are saved by § 2 of the Twenty-First Amendment.[10] In the alternative, the Administrator maintains, if we affirm the district court's judgment, then we should reform the ordered remedy. We will address these two claims in order.

## A.    Standard of review.

We review a grant of summary judgment de novo, applying the same standard as the district court.[11] A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact.[12] In reviewing all of the evidence, we must disregard all evidence favorable to the moving party that the jury

---

[10] Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth., 476 U.S. 573 (1986); Bacchus Imports, Ltd. v. Dias, 468 U.S. 263 (1984); Cooper v. McBeath, 11 F.3d 547 (5th Cir. 1994).

[11] Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).

[12] FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

7

is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached.[13] The nonmoving party, however, cannot satisfy his summary judgment burden with conclusional allegations, unsubstantiated assertions, or only a scintilla of evidence.[14]

**B. Do the challenged provisions of the TABC violate the Commerce Clause?**

**1. The dormant Commerce Clause analysis.**

The U.S. Constitution empowers Congress "[t]o regulate Commerce . . . among the several States."[15] The Supreme Court has long recognized that this provision has a necessary, logical corollary: If Congress has the power to regulate commerce among the states, then the states lack the power to impede this interstate commerce with their own regulations. As Justice Johnson explained in Gibbons v. Ogden: "If there was any one object riding over every other in the adoption of the constitution, it was to keep the commercial intercourse among the States free from all invidious and partial restraints."[16] More recently, the Supreme Court stated that "[t]his 'negative' aspect of the Commerce Clause prohibits economic

_____

[13] Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 151 (2000).

[14] Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

[15] U.S. CONST. art. I, § 8, cl. 3.

[16] 22 U.S. (9 Wheat.) 1, 231 (1824).

8

protectionism — that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors."[17] This "negative aspect" of the Commerce Clause, which "prevent[s] economic Balkanization" among the states,[18] is commonly known as the "dormant Commerce Clause" doctrine.

The Supreme Court has adopted a "two-tiered approach to analyzing state economic regulations under the Commerce Clause."[19] This approach entails classifying state statutes into one of two categories: A state statute may (1) facially discriminate against out-of-state economic interests, or (2) regulate evenhandedly and thereby evince only an indirect burden on interstate commerce. Stated differently, courts ask whether the state statute under review reflects a "discriminatory purpose" or merely a "discriminatory effect."[20] Although the Supreme Court has acknowledged that there is no "clear line" of separation between these two classes of statutes in close cases,[21] the threshold

---

[17] Wyoming v. Oklahoma, 502 U.S. 437, 454 (1992) (quoting New Energy Co. of Indiana v. Limbach, 486 U.S. 269, 273-74 (1988)). See also New Energy Co. v. Limbach, 486 U.S. 269, 273 (1988) (noting that "the Commerce Clause not only grants Congress the authority to regulate commerce among the States, but also directly limits the power of the States to discriminate against interstate commerce").

[18] Bacchus Imports, 468 U.S. at 276.

[19] Brown-Forman Distillers Corp., 476 U.S. at 578-79.

[20] Bacchus Imports, 468 U.S. at 270.

[21] Wyoming, 502 U.S. at 544 n.12 (quoting Brown-Forman Distillers Corp., 476 U.S. at 579).

determination is significant if only because it establishes the constitutional standard of review.

In the first category —— facially discriminatory statutes —— the Supreme Court has long held that "[s]tate laws discriminating against interstate commerce on their face are 'virtually per se invalid.'"[22]  The only way in which a state may escape a determination that it is engaging in constitutionally prohibited economic protectionism is if it "can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest."[23]  "At a minimum such facial discrimination invokes the strictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives."[24]  Under this strict scrutiny, we have held that the state bears the heavy burden "to rescue its statutes."[25]  This burden is stringent: "When a statute directly regulates or discriminates against interstate commerce or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry."[26]

---

[22] Fulton Corp. v. Faulkner, 516 U.S. 325, 331 (1996) (quoting Oregon Waste Systems, Inc. v. Dep't of Envtl. Quality of Ore., 511 U.S. 93, 99 (1994)).

[23] C & A Carbone, Inc. v. Town of Clarkstone, New York, 511 U.S. 383, 392 (1994).

[24] Hughes v. Oklahoma, 441 U.S. 322, 337 (1979).

[25] Cooper, 11 F.3d at 553.

[26] Brown-Forman Distillers Corp., 476 U.S. at 579.

10

In the second category — evenhanded statutes that impose only incidental burdens on interstate commerce — a court should apply a balancing test:

> Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.[27]

This is commonly referred to as the "Pike test," and courts apply it only when "other legislative objectives are credibly advanced and there is no patent discrimination against interstate trade."[28]

### 2. The challenged provisions of the TABC facially discriminate against out-of-state economic interests.

The TABC is cast in the starring role in this dispute. The TABC is a compilation of statutes that regulate the production, distribution, sale, and consumption of all alcoholic beverages within Texas. The Texas legislature first enacted this code in 1935, following the repeal of Prohibition and the adoption of the Twenty-First Amendment, which returned regulation of alcoholic beverages to the states.[29] The TABC was first enacted, and amended

---

[27] Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970) (citation omitted).

[28] Philadelphia v. New Jersey, 437 U.S. 617, 624 (1978).

[29] See TEX. ALCO. BEV. CODE ANN. § 6.03 (discussing the function and purpose underlying the code and its requirements).

11

over the years, pursuant to "the police power of the state [of Texas] for the protection of the welfare, health, peace, temperance, and safety of the people of the state."[30]

Similar to the regulatory regimes in many other states,[31] the TABC creates a three-tier system that strictly separates ownership and operations between manufacturers, wholesalers, and retailers. The vertical integration of the manufacture, distribution or sale of alcoholic beverages is strictly prohibited.[32] And, with rare exceptions, manufacturers are permitted to sell only to wholesalers; wholesalers only to retailers; and retailers only to consumers.[33] This tripartite functional division of firms that participate in the alcoholic beverages industry is designed to aid Texas in the regulation and control of alcohol consumption, and "prevents companies with monopolistic tendencies from dominating all levels of the alcoholic beverage community."[34]

---

[30] TEX. ALCO. BEV. CODE ANN. § 1.03.

[31] Bridenbaugh, 227 F.3d at 851.

[32] See TEX. ALCO. BEV. CODE ANN. § 102.01 (prohibiting "tied house" arrangements, which consists of "overlapping ownership" of the manufacture, distribution, and retail sale of alcohol); § 102.07 (prohibiting manufacturers, distributers, or retailers from acquiring any financial interests in each other).

[33] See generally TEX. ALCO. BEV. CODE ANN. § 11.01–53.009 (requiring permits for the activities of manufacturing, distributing, and selling "liquor," including wine); § 61.01–73.11 (requiring licenses for the activities of manufacturing, distributing, and selling "beer").

[34] S.A. Discount Liquor, Inc. v. Texas Alcoholic Beverage Comm'n, 709 F.2d 291, 293 (5th Cir. 1983).

12

The particular statutes at issue in this case — principally § 107.07, but also, inter alia, § 16.01, § 107.12, and § 110.053 — contain some of the only exceptions to this three-tier system, viz., these statutes permit in-state wineries to sell and ship wine directly to in-state consumers, thereby providing in-state wine manufacturers with an economic advantage by exempting them from having to operate solely within the TABC's otherwise mandatory three-tier system. These exceptions are not available to out-of-state wineries.

The Texas legislature has exempted in-state wineries from the three-tier system by permitting them to engage in two types of retail activity that are prohibited to out-of-state wineries: Texas wineries may deal directly with Texas consumers in both selling and shipping wines. Texas wineries may sell wine directly to Texas consumers "in an amount not to exceed 25,000 gallons annually,"[35] with no per-customer restrictions. In contrast, a Texas resident is prohibited from "personally" bringing into the state more than three gallons of wine purchased from an out-of-state vintner,[36] which de facto restricts how much wine an out-of-state winery may sell directly to Texas residents (or, conversely, restricts how much wine a Texas resident may purchase while he is outside of the jurisdiction of the TABC). Texas wineries are also permitted to

---

[35] TEX. ALCO. BEV. CODE ANN. § 16.01(a)(4).

[36] TEX. ALCO. BEV. CODE ANN. § 107.07(a).

13

<u>ship directly</u> to a Texas consumer any portion of the 25,000 gallons of wine that they have sold to him,[37] but out-of-state wineries are prohibited, under the threat of criminal penalties, from shipping "<u>any</u> alcoholic beverage directly to any Texas resident."[38]

Although the contrast between § 107.07(a) and § 16.01(a)(4) is the most striking —— three gallons versus 25,000 gallons in direct sales to consumers being either permitted or prohibited depending solely on the in-state or out-of-state status of the winery —— Texas wineries are expressly exempted from the strictures of the three-tier system in several other ways.[39]

In summary, even those out-of-state wineries that obtain a permit to export their product to Texas are strictly bound to deliver their product only to those Texas wholesalers who have obtained permits to receive such imports.[40]   In diametric

---

[37] TEX. ALCO. BEV. CODE ANN. § 107.12.

[38] TEX. ALCO. BEV. CODE ANN. § 107.07(f) (emphasis added).

[39] See TEX. ALCO. BEV. CODE ANN. § 16.08 (allowing a Texas winery to sell unlimited quantities of wine directly to consumers at "wine festivals" that are "organized to celebrate and promote the wine industry in this state"); § 102.19 (providing that a winery "may give one or more unopened bottles of Texas-made wine" directly to consumers on the premises of a convention center or civic center in Texas); § 110.053 (providing that a Texas consumer may order wine directly from a Texas winery without being present at the winery; the winery may ship the wine directly to a retailer without going through a wholesaler; and the retailer may then physically deliver or ship the wine to the consumer).

[40] See supra note 7 (listing the other TABC provisions that prohibit out-of-state wineries from selling and shipping wine to Texas consumers).

opposition, in-state wineries are expressly accorded numerous statutory privileges in skirting the three-tier system to sell and ship substantial quantities of wine directly to Texas consumers.

In the face of these statutes, the Administrator baldly asserted before the district court and re-asserts on appeal that the TABC does not discriminate between in-state and out-of-state wineries. It is clear beyond peradventure, however, that the TABC permits in-state wineries to <u>circumvent</u> Texas's three-tier system and both sell and ship <u>directly</u> to in-state consumers; and it is equally clear that the statutes prevent out-of-state wineries from exercising the same privileges. To paraphrase the Bard, that which we call discrimination by any other name would still smell as foul.

The numerous ways in which in-state wineries are exempt from complying with the three-tier system establish that this discrimination is neither evenhanded nor incidental. In fact, it is difficult to label as "incidental" a difference of 24,997 gallons of wine available annually for direct purchase and delivery from a winery by a consumer. The TABC statutes are pellucid: Texas uniquely bestows regulatory exemptions and economic benefits on its own in-state wineries that it does not grant to out-of-state wineries — for the undeniable purpose of promoting Texas's economic interests over those of other states.[41] Most of these

---

[41] Interestingly, in-state wineries appear to be the only beneficiaries of such statutory exemptions in the TABC; the manufacturers of beer and hard liquor remain strictly bound to distribute their products through wholesalers and retailers.

statutory exemptions were adopted by the Texas legislature in either 1995 or 2001,[42] reflecting that the Texas legislature amended the TABC in response to the recent explosion in domestic wine production and consumption in the United States —— blatantly promoting the economic interests of in-state wineries at the expense of out-of-state wineries.[43]

The Texas legislature, though, has spared us from having to infer circumstantially its discriminatory purpose in denying to out-of-state wineries the exemptions to the three-tier system that it has accorded the in-state wineries. The statement of legislative intent that accompanies the Texas Wine Marketing Act declares with candor that the purpose of these exemptions is "to assist the Texas wine industry in promoting and marketing Texas wines and educating the public about the Texas wine industry."[44] The Texas Senate Research Center —— the official public policy and legislative analyst for the Texas Senate and Lieutenant Governor[45]

---

[42] See, e.g., Texas Wine Marketing Assistance Program Act, 77th Leg., R.S., ch. 1001, § 1.01, 2001 Tex. Gen. Laws 2177, 2177 (codified at TEX. ALCO. BEV. CODE ANN. § 110.053); Act of May 5, 1995, 74th Leg., ch. 135, § 1, 1995 Tex. Gen. Laws 970, 970 (codified at TEX. ALCO. BEV. CODE ANN. § 107.07(f)).

[43] See Dickerson, 212 F. Supp. 2d at 695. The district court notes here that Texas now ranks fifth in the country in terms of states' wine production, citing Michael A. Lindenburger, The Sweet Smell of Growth: State's Winemakers Say Legislative Compromise will Help Business, DALLAS MORNING NEWS, Apr. 22, 2001, available at 2001 WL 18816339.

[44] TEX ALCO. BEV. CODE ANN. § 110.002(a).

[45] See http://www.senate.state.tx.us/SRC/Info.htm#top.

16

—— assessed the "purpose" of the Texas Wine Marketing Act as follows:

> The growth of the Texas wine industry has had a positive impact on the Texas economy. California produces many times the amount of wine Texas produces, but consumes only a fraction more than Texas consumes. Texas is a significant consumer of wine, but demand is not being supplied by Texas wineries. H.B. 892 [i.e., the Texas Wine Marketing Act] allows Texas wineries increased access to the Texas market and provides consumers with better access to Texas wines.[46]

In other words, the Texas legislature became concerned that increased "demand [for wine] is not being supplied by Texas wineries"[47] —— relative to California's and other states' wineries —— and thus embarked on the plan to create special exemptions for its in-state wineries to bolster their sales. The stated purpose is unambiguous: To promote the sale and consumption of Texas wine over those wines produced in other states.[48] If there were any doubt as to the reason for Texas's discriminatory treatment of out-of-state wineries, the Texas Wine Marketing Act removes it, making clear precisely why Texas adopted these paternalistic exemptions for in-state wineries.

---

[46] Plaintiffs' First Amended Complaint, Ex. A, available at http://www.capitol.state.tx.us/cgi-bin/tlo/textframe.cmd?LEG=77&SESS=R&CHAMBER=H&BILLTYPE=B&BILLSUFFIX=00892&VERSION=5&TYPE=A.

[47] Id.

[48] Plaintiffs also submitted evidence from the legislative history for the Texas Wine Marketing Act, in which Representative Howard remarked that its ultimate function was to "force people [in Texas] to sell [Texas] alcoholic beverages that they might not otherwise choose to sell." Plaintiffs' First Amended Complaint, Ex. B (emphasis added).

17

In this respect, the operable facts of this case are identical to those resulting in the Supreme Court's decision in Bacchus, the foundational case that established the modern jurisprudential framework for assessing state alcohol regulations under the Commerce Clause.[49] In Bacchus, the Court held that Hawaii's exemption of its in-state alcoholic beverages from an excise tax that out-of-state liquor producers were required to pay ran afoul of the Commerce Clause. In reaching this decision, the Supreme Court quoted from the legislative history of the Hawaiian statute, which stated that the purpose of the tax exemption was to "encourage and promote the establishment of a new industry" in the state, such as stimulating "the local fruit wine industry."[50] As we may have today, the Supreme Court observed that it "need not guess at the legislature's motivation, for it is undisputed that the purpose of the exemption was to aid Hawaiian industry."[51] The Hawaiian statute expressly reflected a discriminatory purpose, and thus failed to pass constitutional muster under the Court's strict scrutiny.[52]

Likewise here, the record makes clear the Texas legislature's

_____

[49] See Brown-Forman Distillers Corp., 476 U.S. at 584 (citing Bacchus for the proposition that state regulation of alcohol is reviewable under the Commerce Clause).

[50] Bacchus Imports, 468 U.S. at 270.

[51] Id. at 271.

[52] Id. at 273.

18

unabashed discriminatory intent, and, as Plaintiffs demonstrate, the evidence of the impact of this discrimination on interstate commerce is not challenged by the Administrator —— because it cannot be.  As the Supreme Court stated in Bacchus:  "It has long been the law that States may not 'build up [their] domestic commerce by means of unequal and oppressive burdens upon the industry and business of other States.'"[53]

The Administrator nonetheless attempts to divert our recognition of the essential similarities between the instant case and Bacchus by misrepresenting the central legal issue of this case.  The Administrator insists repeatedly throughout his briefs that Plaintiffs are challenging the legitimacy of Texas's three-tier system in their quest to establish an unregulated, national market in wine.  The Administrator's strategy here is palpable: He is seeking to cash in on the Seventh Circuit's Bridenbaugh decision, which rejected a challenge to Indiana's three-tier system by out-of-state wineries.[54]  "Just as in Bridenbaugh," urges the Administrator, "Texas 'insists that every drop of liquor pass through its three-tier system.'"[55]  This from one who must know

---

[53] Id. at 272 (quoting Guy v. Baltimore, 100 U.S. 434, 443 (1880)).

[54] The Administrator is also apparently hoping to benefit from our having specifically approved of Texas's three-tier system when we previously rejected a Commerce Clause challenge to it.  See S.A. Discount Liquor, 709 F.2d at 293.

[55] The Administrator is quoting Bridenbaugh, 227 F.3d at 853.

better than anyone the inaccuracy of that assertion, directly in the teeth of the TABC's explicit exception of domestic wine from that very same three-tier system.

The Administrator's contentions here are nothing short of outright mischaracterization of both the statutes he is charged with enforcing and the legal position unambiguously espoused by Plaintiffs. First, it is revealing that, despite the Administrator's repeated allegations that Plaintiffs are seeking an unfair advantage for out-of-state wineries in the creation of an unregulated national market in wine, he cannot identify a single statement by Plaintiffs that evidences this alleged goal. Instead, he repeatedly quotes a single sentence fragment from the district court's introductory paragraph in its first summary judgment order, apparently embracing the rhetorical tactic that repeating a falsehood enough times will somehow establish its veracity. In fact, precisely the opposite is true; Plaintiffs expressly disavow this alleged purpose, and there is nothing implicit in their claims for equal treatment under the TABC that requires such a result.

Second, it is patently false for the Administrator to claim that, like Indiana in <u>Bridenbaugh</u>, Texas requires that "<u>every</u> drop of liquor pass through its three-tier system."[56] The <u>Bridenbaugh</u> decision, even though not controlling precedent here, directly supports Plaintiffs' position, not the Administrator's. The

---

[56] <u>Id.</u>

20

dispositive fact in <u>Bridenbaugh</u> was Indiana's <u>equal</u> <u>application</u> of its three-tier system to all alcoholic beverages, regardless of where such beverages were produced. As the Seventh Circuit succinctly summarized the issue:

> Indiana insists that <u>every</u> drop of liquor pass through its three-tier system and be subjected to taxation. Wine originating in California, France, Australia, or Indiana passes through the same three tiers and is subjected to the same taxes. Where's the functional discrimination?[57]

Thus, the Seventh Circuit recognized that the out-of-state wineries in <u>Bridenbaugh</u> were attempting to highjack the dormant Commerce Clause doctrine to obtain <u>preferential</u> treatment for themselves. Properly analyzed, the out-of-state wineries in <u>Bridenbaugh</u> were seeking to obtain the same preferential benefits that Texas grants to its <u>in-state</u> wineries: An exemption from the three-tier system that is denied to their competitors. As there was no disparity in regulatory compliance between in-state and out-of-state winery interests in Indiana's scheme, the Seventh Circuit rightly held that there was no Commerce Clause violation.

The distinction between Indiana's scheme as approbated in <u>Bridenbaugh</u> and Texas's scheme under the TABC supplies additional comfort to our affirmance of the district court's summary judgment in this case. In relying on <u>Bridenbaugh</u>, the Administrator omitted an essential element of the decision, in which the Seventh Circuit observed that the Twenty-First Amendment "authorizes" Indiana's

---

[57] <u>Id.</u> at 853 (original emphasis).

regulation of alcohol through its three-tier system, "<u>unless the state has used its power to impose a discriminatory condition on importation</u>, one that favors Indiana sources of alcoholic beverages over sources in other states, as Hawaii did in <u>Bacchus</u>."[58] There was no such discrimination in Indiana's regulatory regime, but there certainly is such discrimination against out-of-state wineries in the TABC's regime. As the <u>Bridenbaugh</u> court recognized, such discrimination is undeniably proscribed by <u>Bacchus</u> ── a point that the Administrator neglects to mention when he invokes <u>Bridenbaugh</u>.

Finally, the Administrator makes no attempt to identify the unavailability of alternative means by which to achieve the policy goals of the TABC. Although the Administrator does expound conclusional assertions that the challenged provisions of the TABC effectuate the regulation of alcohol consumption in Texas, he makes no real effort either to offer up evidence for this proposition or to show how these statutes are the only means by which to achieve this goal. Under the two-tiered Commerce Clause analysis, however, the Administrator <u>must</u> establish the absence of any available alternative methods for enforcing any otherwise legitimate policy goals of the TABC.[59] In contrast, Plaintiffs submitted evidence to

---

[58] <u>Id.</u> (emphasis added).

[59] <u>Cooper</u>, 11 F.3d at 554. <u>See also</u> <u>Maine v. Taylor</u>, 477 U.S. 131 (1986) (holding that Maine's ban on the import of baitfish is constitutional because Maine has no other means to prevent the spread of parasites to and the adulteration of its unique, native

show that Texas may enforce its temperance concerns under the Twenty-First Amendment through innumerable other legitimate statutes.[60]

Even if the Administrator had met the basic requirements of the constitutional analysis in this Commerce Clause case, he would fail in the end. We recognized in Cooper, when we struck down other discriminatory provisions of the TABC, that the Administrator "would be hardpressed to offer a justification substantial enough to authorize a wall prohibiting equal competition of non-Texans in the retail liquor business."[61] Just as in this case, the defendant in Cooper —— an earlier administrator of the Alcoholic Beverage Commission —— supported discriminatory licensing requirements with only generalized, "boilerplate" references to Texas's police power to regulate alcohol, as sanctioned under § 2 of the Twenty-First Amendment.[62] We concluded that such arguments "hardly explain[] the State's particular restrictions on out-of-state ownership of

---

fish species).

[60] See TEX. ALCO. BEV. CODE § 106.03 (providing for a Class A misdemeanor to sell alcoholic beverages to a minor); § 106.06 (providing for a Class B misdemeanor to make alcoholic beverages available to a minor); § 107.03 (prohibiting transporting or delivering liquor in a dry area); § 101.31 (prohibiting transportation, delivery or possession of any alcoholic beverage in a dry area); § 102.01 (prohibiting "tied house" arrangements that vertically integrate the manufacture, distribution and sale of alcoholic beverages).

[61] Cooper, 11 F.3d at 554.

[62] Id. at 553.

various liquor licenses," and thus dismissed these "purported justifications as unpersuasive and insufficient."[63]  The result in Cooper was the same as in Bacchus: We determined that an in-state residency requirement for issuing permits under the TABC was economically discriminatory, and therefore constitutionally invalid under the Commerce Clause.[64]

In not even attempting to provide the "substantial justification" required by our precedent, the Administrator has chosen instead to mischaracterize the nature of both the challenged provisions of the TABC and the complaint actually filed by Plaintiffs.  At best, the Administrator has relied on conclusional claims concerning his constitutionally sanctioned police power to regulate alcohol importation under the Twenty-First Amendment.

When the issue of this case is properly framed, it becomes clear that Cooper and Bacchus dictate our affirming the district court's determination that the TABC's provisions that are challenged by Plaintiffs violate the Commerce Clause.  In purpose and effect, TABC § 107.07 and related statutes discriminate against out-of-state economic interests and thereby impede interstate commerce in violation of the Commerce Clause.  If anything, the precedential value of Cooper and Bacchus is accentuated by the Administrator's patently obvious tactic of ignoring these two

---

[63] Id. at 554 (emphasis added).

[64] Id. at 555.

important cases in his arguments on appeal.

## C. Are the economically discriminatory provisions of the TABC saved by § 2 of the Twenty-First Amendment?

The Administrator propounds his belief that any juridical determination that § 107.07 and related sections of the TABC impede interstate commerce is ultimately moot, which may explain his half-hearted effort to meet the requirements of the two-tiered Commerce Clause test. The foundation of the Administrator's position is simple: § 2 of the Twenty-First Amendment. This section of the Amendment states: "The transportation or importation into any State . . . for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."[65]

This constitutional provision, urges the Administrator, empowers states to regulate the importation of alcohol absolutely, so that statutes that serve this function simply cannot contain any "fatal defect"[66] under the Commerce Clause. Although he acknowledges that alcohol regulations may be held to account under other provisions of the Constitution and federal law, the Administrator doggedly maintains that a state is free to regulate "imports" of "intoxicating liquors" under the Twenty-First Amendment regardless of its impact on interstate commerce.[67] The

---

[65] U.S. CONST. Amend. XXI, § 2.

[66] Hughes, 441 U.S. at 337.

[67] Accepting arguendo the Administrator's premise, there remains a colorable claim that the provisions of the TABC challenged by Plaintiffs are unconstitutional under the Privileges

25

Administrator states his position: "[W]hen a state directly regulates importation of alcohol under the explicit language of the Twenty-first Amendment, that is effectively the end of the constitutional inquiry."

Although this point consumes almost the entirety of the Administrator's briefs, it is foreclosed by binding precedent of the Supreme Court and this circuit that he largely evades in his briefs. In Cooper, we quoted the Bacchus Court to the effect that "[i]t is by now clear that the [Twenty-First] Amendment did not entirely remove state regulation of alcoholic beverages from the ambit of the Commerce Clause."[68] The Court explained further in

---

and Immunities Clause. See U.S. CONST. art. IV, § 2, cl. 1. As amici have pointed out, the Privileges and Immunities Clause compliments the role of the Commerce Clause in preventing "economic Balkanization," by intending "to place the citizens of each State upon the same footing as citizens of other States." Hicklin v. Orbeck, 437 U.S. 518, 524 (1978). See also CONG. GLOBE, 39th Cong., 1st Sess. 1836 (1866) (statement of Rep. Lawrence) (speaking of the Privileges and Immunities Clause in Article IV, "[t]here it stands, the palladium of equal fundamental civil rights for all citizens"). Texas's economically discriminatory regulations against out-of-state wineries clearly violate the "substantial equality" in fundamental rights that is secured, under the Constitution, to all citizens of different states. Toomer v. Witsell, 334 U.S. 385, 396 (1948). The Supreme Court has, at least implicitly, endorsed this view in Dennis, where it recognized that "the Commerce Clause confers 'rights, privileges, or immunities' within the meaning of [a] § 1983 [claim]." 498 U.S. at 446 (quoting 42 U.S.C § 1983) (emphasis added). We need not reach this issue to dispose of this case, as Plaintiffs' claims under the Commerce Clause clearly reveal Texas's unconstitutional discrimination in the TABC. Nonetheless, this shows how the Administrator's position is constitutionally infirm even if we agreed with his defense of § 107.07 and related provisions in the TABC.

[68] Cooper, 11 F.3d at 555 (quoting Bacchus, 468 U.S. at 275).

26

<u>Bacchus</u> that:

> The central purpose of [§ 2 of the Twenty-First Amendment] was not to empower States to favor local liquor industries by erecting barriers to competition. It is also beyond a doubt that the Commerce Clause itself furthers strong federal interests in preventing economic Balkinization. State laws that constitute mere economic protectionism are therefore not entitled to the same deference as laws enacted to combat the perceived evils of an unrestricted traffic in liquor.[69]

This is commonly referred to as the "core concerns" test, which entails assessing whether state statutes reflect the "central purpose" or the "core concern" of the Twenty-First Amendment, <u>viz.</u>, the promotion of temperance.[70] Some courts have also recognized the prevention of monopolies or organized crime from (re)gaining control of the alcohol industry and the collection of taxes as other policies effectuated by the Twenty-First Amendment.[71] When a state's regulation of alcohol falls outside the scope of these core concerns of the Twenty-First Amendment, the Supreme Court typically strikes them down as invalid intrusions on interstate

---

[69] <u>Bacchus Imports</u>, 468 U.S. at 276.

[70] <u>See</u> <u>id.</u> (promoting temperance); <u>Quality Brands v. Barry</u>, 715 F. Supp. 1138, 1142-43 (D.D.C. 1989), <u>aff'd</u>, 901 F.2d 1130 (D.C. Cir. 1990) (same); <u>Loretto Winery, Ltd. v. Gazzara</u>, 601 F. Supp. 850, 861 (S.D.N.Y. 1984), <u>aff'd sub nom.</u>, <u>Loretto Winery, Ltd. v. Duffy</u>, 761 F.2d 140 (2d Cir. 1985) (same).

[71] <u>See</u> <u>North Dakota v. United States</u>, 495 U.S. 423, 432 (1990) (plurality opinion) ("ensuring orderly market conditions" and "raising revenue"); <u>Joseph E. Seagram & Sons, Inc. v. Hostetter</u>, 384 U.S. 35, 47-48 (1966), <u>overruled on other grounds</u>, <u>Healy v. Beer Institute</u>, 491 U.S. 324, 342-43 (1989) (preventing monopolies); <u>S.A. Discount Liquor, Inc.</u>, 709 F.2d at 293 (preventing monopolies).

commerce.[72]   We expressly adopted the "core concerns" test in Cooper, and, following the teaching of Bacchus, noted that the "core concerns of the Twenty-first Amendment are not entitled to greater weight than the principle of nondiscrimination animating the Commerce Clause."[73]

The Administrator gives lip service to the "core concerns" analysis under the Twenty-First Amendment, but tries to change the substance of this constitutional test.   Instead of assessing whether his state's regulation of alcohol serves its policy preference of temperance, the Administrator maintains that the "core concerns" test requires that a court ask only whether a state statute controls the importation of alcohol.  Because, according to the Administrator, the statutes challenged by Plaintiffs impose only import restrictions, we must employ something akin to a rational-basis/Pike balancing test. He insists that we are limited to assessing whether there is a reasonable justification for the import restrictions on the out-of-state wineries.  "Here," asserts the Administrator, "the challenged statutes meet this minimal threshold of reasonableness."  This, concludes the Administrator, outweighs any purported federal interest in establishing a

---

[72] See Capital City Cable, Inc. v. Crisp, 467 U.S. 691, 712-16 (1984) (holding that Oklahoma's ban on alcohol-related television ads violated the Commerce Clause, and that it was not saved by the Twenty-First Amendment because such a ban did not reflect the "central power reserved by § 2 of the Twenty-First Amendment").

[73] See Cooper, 11 F.3d at 555 (citing Healy, 491 U.S. at 344 (Scalia, J., concurring)).

national, unregulated market in wine.[74]

As Plaintiffs rightly note, the Administrator has impermissibly distorted the "core concerns" test through a two-step legerdemain. First, the Administrator bases his arguments solely on dicta in <u>non</u>-Commerce Clause cases, at the same time virtually ignoring in their entirety the central modern Supreme Court cases addressing the issue of the relationship between the Commerce Clause and the Twenty-First Amendment. For instance, the Administrator principally derives his novel version of the "core concerns" test from dicta in the Supreme Court's decision in <u>California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.</u>,[75] which addressed the relationship between the Sherman Antitrust Act and the Twenty-First Amendment. Yet, the Supreme Court's holding in <u>Bacchus</u>, and those Supreme Court cases that followed in its wake, such as <u>Brown-Forman Distillers Corp.</u> and <u>Healy</u>, not to mention our own decision in <u>Cooper</u>, are barely mentioned in the Administrator's briefs. We can count on one hand the number of pages in his appellate briefs that the Administrator devoted to discussing the holdings of <u>Bacchus</u> and <u>Cooper</u>. It is only by outrightly ignoring the central Supreme Court and Fifth Circuit

---

[74] As we noted earlier, the Administrator repeatedly misrepresents the nature of Plaintiffs' claims in this litigation. Plaintiffs are not seeking to create a national, unregulated market in wine; rather, they seek only equal treatment between in-state and out-of-state wineries under Texas statutes.

[75] 445 U.S. 97 (1980).

29

cases addressing the constitutional nexus between the Commerce Clause and the Twenty-First Amendment that the Administrator has been able to fudge the analyses employed in these controlling precedents.

Second, even assuming _arguendo_ that _Midcal Aluminum_ and _Bridenbaugh_ were controlling on our decision here, these cases do not support the Administrator's theme that Texas's discriminatory restrictions on out-of-state wineries are saved from all judicial scrutiny under the Commerce Clause.  The _Midcal Aluminum_ Court explicitly rejected the position adopted by the Administrator here, quoting from its earlier decision in _Hostetter v. Idlewild Liquor Corp._:

> To draw a conclusion . . . that the Twenty-first Amendment has somehow operated to "repeal" the Commerce Clause wherever regulation of intoxicating liquors is concerned would, however, be an absurd oversimplification.  If the Commerce Clause had been _pro tanto_ "repealed," then Congress would be left with no regulatory power over interstate or foreign commerce in intoxicating liquor.  Such a conclusion would be patently bizarre and is demonstrably incorrect.[76]

Yet, before us, the Administrator advocates exactly this "patently bizarre," "demonstrably incorrect," and "absurd oversimplification": He maintains that it matters not that Texas's regulation of wine explicitly discriminates between in-state and out-of-state wineries, because the regulations concern alcohol imports and this court's inquiry ends there (per § 2 of the Twenty-

---

[76] _Midcal Aluminum, Inc._, 445 U.S. at 109 (quoting _Hostetter v. Idlewild Liquor Corp._, 377 U.S. 324, 331-32 (1964)).

First Amendment). Not so: In <u>Bacchus</u>, the Supreme Court turned its dicta in <u>Midcal Aluminum</u> into a constitutional standard, which it reaffirmed in <u>Brown-Forman Distillers Corp.</u>,[77] and which we followed in <u>Cooper</u>. The Seventh Circuit acknowledged this basic constitutional truth in <u>Bridenbaugh</u>, when it recognized that the Supreme Court's Commerce Clause jurisprudence establishes that "§ 2 enables a state to do to importation of liquor —— including direct deliveries to consumers in original packages —— what it chooses to do to internal sales of liquor, but nothing more."[78]

The Administrator's deferential reasonableness/balancing test is, at best, a legal dinosaur that went extinct long ago in the history of the Supreme Court's Twenty-First Amendment jurisprudence.[79] As the Supreme Court further stated in <u>Hostetter</u> (and again quoted in the <u>Midcal Aluminum</u> and <u>Bacchus</u> decisions):

> Both the Twenty-first Amendment and the Commerce Clause are parts of the same Constitution. Like other provisions of the Constitution, each must be considered in the light of the other, and in the context of the issues at stake in any concrete case.[80]

Notably, this proposition served as an integral premise in the

---

[77] 476 U.S. at 578-79.

[78] <u>Bridenbaugh</u>, 227 F.3d at 853.

[79] <u>See</u> <u>Cooper</u>, 11 F.3d at 555 (discussing "[o]lder caselaw" that states possessed "unfettered" authority under the Twenty-First Amendment "to regulate commerce in intoxicating liquors").

[80] <u>Hostetter</u>, 377 U.S. at 332. <u>See also</u> <u>Bacchus Imports</u>, 468 U.S. at 275 (quoting <u>Hostetter</u>, 377 U.S. at 332); <u>Midcal Aluminum</u>, 445 U.S. at 109 (quoting <u>Hostetter</u>, 377 U.S. at 332).

31

Supreme Court's holding in Bacchus. Thus, even if we agreed with the Administrator (which we do not), we are nonetheless obligated under the doctrine of stare decisis to follow Bacchus, Brown-Forman Distillers, and Cooper, and the constitutional standards enunciated therein. All of these cases plainly reject the constitutional standard of review proffered by the Administrator in favor of a "two-tiered" Commerce Clause test, which requires us to scrutinize strictly whether a state's statutes are tailored to the Twenty-First Amendment's "core concerns."

As the Administrator denies that this is the valid constitutional test, he rejects outright any requirement that he proffer evidence connecting the disputed statutes to the "core concerns" of the Twenty-First Amendment, such as furthering temperance. Rather, the Administrator makes only conclusional assertions that Texas's import restrictions on out-of-state wineries are "reasonable," and thus constitutional under the Twenty-First Amendment. As the Administrator mistakenly believes that the challenged statutes are basically shielded from constitutional review under the Commerce Clause, he has given us nothing to suggest that summary judgment was inappropriate.

Not so for Plaintiffs. They have gone to great lengths —— before the district court and on appeal —— to establish the discriminatory intent and effect of the challenged statutes, the availability of alternative means to enforce Texas's core concerns under the Twenty-First Amendment, and the absence of any safe

32

harbor for the challenged statutes under § 2 of the Twenty-First Amendment.  In stark contrast, the Administrator's defense of § 107.07 and related sections of the TABC is "nothing but a pretextual rationale . . . for economic protectionism."[81]  Texas may not use the Twenty-First Amendment as a veil to hide from constitutional scrutiny its parochial economic discrimination against out-of-state wineries.  In the words of the Bacchus Court, such "economic Balkanization"[82] is absolutely proscribed by the Commerce Clause.

**D.  Is enjoining the Administrator from enforcing the discriminatory provisions of the TABC an appropriate remedy?**

After determining that § 107.07 and related provisions of the TABC unconstitutionally discriminate against out-of-state economic interests, the district court enjoined the enforcement of these statutes as applied to Plaintiffs (and, consequently, to out-of-state wineries).  On appeal, the Administrator argues that, even if we affirm the district court's decision concerning the unconstitutionality of § 107.07 and related statutes, we should reform that court's ordered remedy.  Essentially, the Administrator

---

[81] Quality Brands, 715 F. Supp. at 1143.  See also Bolick v. Roberts, 199 F. Supp. 2d 397, 445 (S.D. Va. 2002) (holding that Virginia's "preference for in-state wineries . . . cannot by sustained because it is but a pretext for exclusion"), vacated as moot, Bolick v. Danielson, 2003 WL 21205840 (4th Cir. May 23, 2003) (noting that Virginia's amendment of its Alcoholic Beverage Code, eliminating the discriminatory treatment of out-of-state wineries, made plaintiff's claims moot).

[82] Bacchus Imports, 468 U.S. at 276.

insists that, if we determine that the challenged TABC provisions discriminate against out-of-state wineries in violation of the Commerce Clause, the appropriate remedy is an injunction against the enforcement of the special benefits accorded to the in-state wineries in the Texas Wine Marketing Act. We disagree.

The Supreme Court has held that "when the 'right invoked is that of equal treatment,' the appropriate remedy is a mandate of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class."[83] In some contexts, the Supreme Court favors the extension of benefits to the excluded class, such as in cases involving tax burdens deemed unconstitutionally unequal. As the Supreme Court stated in its seminal case on this subject: "[I]t is well settled that a taxpayer who has been subjected to discriminatory taxation through the favoring of others in violation of federal law cannot be required himself to assume the burden of seeking an increase of the taxes which the others should have paid."[84]

The policy justification for extending benefits in tax cases, rather than equalizing burdens, is apropos to those cases addressing discriminatory burdens that have been placed on out-of-

---

[83] Heckler v. Mathews, 465 U.S. 728, 740 (1984) (quoting Iowa-Des Moines Nat'l Bank v. Bennett, 284 U.S. 239, 247 (1931)) (emphasis added).

[84] Iowa-Des Moines Nat'l Bank, 284 U.S. at 247.

state economic interests in violation of the Commerce Clause. Here, Plaintiffs sued to obtain equal benefits under the TABC, i.e., direct sales and shipments of wine to Texas consumers. This goal —— the extension of benefits, not the extension of burdens —— is inherent in a claim under the Commerce Clause. "The Court has often described the Commerce Clause as conferring a 'right' to engage in interstate trade free from restrictive state regulation."[85] Thus, it is not the function of litigants seeking redress for violations of their constitutional rights under the Commerce Clause to seek the imposition of affirmative burdens on other parties competing in the marketplace. The constitutional right the Plaintiffs here seek to protect is their right to participate in interstate commerce that is unimpeded by protectionist state policies.[86]

This is the reason why particular state statutes that courts have adjudged unconstitutional under the Commerce Clause are

---

[85] Dennis, 498 U.S. at 448.

[86] Plaintiffs would likely have lacked standing to challenge only § 16.01 and the other TABC provisions that grant special benefits to in-state wineries. The reason: The right secured by the Commerce Clause is the right to engage in interstate trade that is free from discriminatory restrictions imposed by the states. Id. Thus, a Commerce Clause claim can only be redressed in the form of eliminating discriminatory restrictions that have been imposed on out-of-state interests. This is in fact what the courts have done when they have determined that state statutes have imposed discriminatory restrictions on out-of-state interests. See infra.

typically nullified or their enforcement enjoined.[87]  In Bacchus,

for instance, the Court invalidated the discriminatory statute that

imposed the excise tax only on out-of-state liquor producers, and

remanded for a determination of the tax refund owed to these

producers.[88]  If the Bacchus Court followed the Administrator's

proposed remedy here, it would have extended the excise tax to all

liquor producers, both in-state and out-of-state.  But this was not

the goal of the litigants in Bacchus; neither is it the goal of

Plaintiffs here.

The Administrator's request for reformation of the remedy asks

us, in essence, to act in a legislative capacity.  If we were to

reform the district court's remedies so that all in-state wineries

were required to use Texas's three-tier system, the wholesale

revision of substantial portions of the TABC would be required.

The Administrator again mischaracterizes the nature and scope of

the discriminatory TABC statutes, incorrectly asserting that the

only statutes that discriminate against out-of-state wineries are

---

[87] See, e.g., Camps Newfound/Owatonna, Inc. v. Town of Harrison, 520 US. 564 (1997) (reinstating a trial court's nullification of property tax exemptions because the Supreme Court held that such exemptions violated the Commerce Clause); Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality, 511 U.S. 93 (1994) (invalidating state regulations providing higher surcharges for out-of-state solid waste disposal vis-a-vis in-state disposal); Brown-Forman Distillers Corp., 476 U.S. at 585 (invalidating state affirmation law as violating the Commerce Clause); Bacchus Imports, 468 U.S. 276-77 (invalidating, under the Commerce Clause, state statute that imposed excise tax on only out-of-state liquor producers and remanding for determination of tax refund owed).

[88] Id.

contained in the Texas Wine Marketing Act, only recently enacted in 2001. As we have already noted, however, many of the discriminatory provisions in the TABC, including § 107.07, were enacted in 1995 or earlier, not in 2000.[89] The remedy requested by the Administrator involves the nullification or enjoined enforcement of many statutes that have been in effect for a substantial time.

We must decline the Administrator's invitation to assume the mantle of super legislature, actively rewriting substantial portions of the TABC under the guise of validating a Commerce Clause challenge. If the Texas legislature wishes to impose burdens equally — as opposed to granting benefits equally — then that is its prerogative, not ours. In cases like this, our constitutional role is clear: We should enforce the constitutional right only by nullifying, or enjoining the enforcement of, the offending statutes, particularly when such statutes are held unconstitutional only as applied to the complainants at bar.

Thus, the limited remedy specifically requested by Plaintiffs before the district court — an injunction against the enforcement of those statutory provisions that discriminate against out-of-state wineries — is the prudential way for federal courts to

---

[89] See, e.g., Act of May 5, 1995, 74th Leg., ch. 135, § 1, 1995 Tex. Gen. Laws 970, 970 (codified at Tex. Alco. Bev. Code Ann. § 107.07(f)).

37

perform their constitutional surgery on the TABC.[90]  This properly observes the separation of powers, leaving to Texas's legislature its freedom to act in its proper capacity in deciding whether to restrict or further expand the benefits that it has already created for in-state wineries.  This will also permit the relevant parties to engage in the public debate —— more realistically, the lobbying —— that should and almost certainly shall occur when such decisions are appropriately made through the democratic process.

III.
CONCLUSION

In Cooper, we concluded our analysis of the discriminatory permit restrictions of the TABC by noting that the "statutory barrier Texas has erected . . . results in shielding the State's operators from the rigors of outside competition.  This rule subjects such laws to the Commerce Clause's insistence on nondiscrimination."[91]  As the district court recognized, that precedent compels the same result in this case: Absent an identical

---

[90] This likely explains the Fourth Circuit's motivation for choosing to extend burdens, rather than extend benefits, when it struck down provisions of the North Carolina Alcoholic Beverage Code ("NCABC") as violating the Commerce Clause. Beskind v. Easley, 325 F.3d 506 (4th Cir. 2003).  The Beskind court noted that equalizing the regulatory burden required only enjoining a "single provision," id. at 519, but extending the privilege of direct sales and shipments to out-of-state wineries required enjoining several statutes.  The NCABC also contained a specific purpose statement that it should be "liberally construed" in favor of its regulation and control of alcohol.  Id. (quoting N.C. GEN. STAT. § 18B-100).  There is no such statement in the TABC.

[91] Cooper, 11 F.3d at 555.

restriction on Texas wineries, Texas's prohibition against out-of-state wineries directly selling and shipping wine to Texas consumers is constitutionally defective under the Commerce Clause.[92] This is not even a close call. We need not consider the extensive litigation on this issue that has burgeoned in recent years, because we could not have asked for a case more directly on point to the facts of <u>Bacchus</u> and <u>Cooper</u>.

The only complications in the adjudication arise from the Administrator's mischaracterization of almost every relevant point — from the proper constitutional test to the nature of the case law to the gravamen of Plaintiffs' legal position. Contrary to the Administrator's spin, the record clearly establishes that (1) Plaintiffs are seeking only <u>equal</u> <u>treatment</u> under Texas law for both in-state and out-of-state wineries in selling and shipping wine directly to Texas consumers, (2) the legal issue before us is Texas's discriminatory treatment of out-of-state wineries vis-a-vis in-state wineries, not the legitimacy of Texas's three-tier system, and (3) this discriminatory treatment entails the in-state wineries' being <u>exempted</u> from the three-tier system to which out-of-state wineries are subjected. Setting aside the Administrator's questionable characterization of the issues, his claims concerning the actual purpose and effect of the challenged statutes amount to nothing more than unsubstantiated assertions and conclusional

---

[92] <u>Dickerson</u>, 212 F. Supp. 2d at 694.

allegations. In Cooper, we held that similar conclusional and unsubstantiated assertions were unavailing,[93] and they remain so when we are asked again to review other discriminatory provisions in the same regulatory statutes that were before us in Cooper.[94]

Plaintiffs demonstrated before the district court that Texas's restrictions against direct sales and shipments by out-of-state wineries to Texas residents are intended to — and in fact do — discriminate to the benefit of in-state wineries, which are not hamstrung by the economic constraints of having to sell their products through Texas's otherwise legitimate three-tier system. As the record makes clear, small out-of-state wineries, which constitute a substantial majority of the total number of wineries throughout the country, are hurt by these discriminatory restrictions, as Texas wholesalers (despite having permits to import their wine) do not import their products because the quantity of product and the consumer demand in each wholesaler's local market are too small to justify the wholesaler's marginal cost in importing and selling the product. The Texas legislature thus achieves exactly what it sought: Texas wines are more available for purchase by Texas consumers because these consumers are essentially denied access to the products of out-of-state

---

[93] 11 F.3d at 554.

[94] See Little, 37 F.3d at 1075 (holding that a nonmoving party cannot satisfy his summary judgment burden with only conclusional allegations, unsubstantiated assertions, or a mere scintilla of evidence).

40

wineries, and vice-versa.  This is exactly the type of geographic discrimination that is prohibited by the Commerce Clause and, as applied, is a patent violation of Plaintiffs' constitutional rights.[95]  For these reasons, the district court's summary judgment order is, in all respects,

AFFIRMED.

---

[95] <u>Dennis</u>, 498 U.S. at 448 ("The Court has often described the Commerce Clause as conferring a 'right' to engage in interstate trade free from restrictive state regulation.").