**SOUTHERN WINE AND SPIRITS OF TEXAS, INC., Harvey R. Chaplin, Wayne E. Chaplin, Paul B. Chaplin, and Steven R. Becker, Plaintiffs,**

v.

**Alan STEEN, in his Official Capacity as Administrator of the Texas Alcoholic Beverage Commission, Defendant.**

**No. A 06 CV 720 LY.**

United States District Court,
W.D. Texas,
Austin Division.

May 16, 2007.

Christopher V. Popov, Vinson & Elkins, Gary Ewell, Oral Argument, Vinson & Elkins, LLP, Kimberly A. Frost, Jack Martin & Associates, Austin, TX, for Southern Wine and Spirits of Texas, Inc., Harvey R. Chaplin, Wayne E. Chaplin, Paul B. Chaplin, Steven R. Becker, Plaintiffs.

James Carlton Todd, Oral Argument, Office of the Attorney General, State of Texas, Austin, TX, for Alan Steen in his official capacity as Administrator of the Texas Alcoholic Beverage Commission, Defendant.

### MEMORANDUM OPINION AND ORDER

YEAKEL, District Judge.

Before the Court is the above styled and numbered cause of action. Plaintiffs Southern Wine and Spirits of Texas, Inc. ("Southern Wine of Texas"), Harvey Chaplin, Wayne Chaplin, Paul Chaplin, and Sev-

en Becker, all residents of Florida,[1] commenced this action seeking declaratory and injunctive relief against Defendant Alan Steen in his official capacity as the Administrator of the Texas Alcoholic Beverage Commission ("TABC"). *See* 28 U.S.C. §§ 2201, 2202. Southern Wine of Texas contends that the TABC's refusal of Southern Wine of Texas's application for the permit and licenses necessary for it to operate as a wholesaler, general distributor, and importer of alcoholic beverages in Texas ("Application"), based solely on Texas's one-year durational residency and citizenship statutes,[2] foreseeably deprived it of the right to engage in interstate commerce in violation of the Commerce Clause of the United States Constitution, and further deprived it of the privilege of owning and engaging in business across state lines in violation of the Constitution's Privileges and Immunities Clause, for which it is entitled to relief.[3] *See* 42 U.S.C. § 1983. Additionally, Southern Wine of Texas contends that the refusal of its Application is in direct contravention of *Cooper v. McBeath*, which held that the enforcement of Texas's durational residency and citizenship requirements violates the Commerce Clause and, as the Texas statutes "amount to simple economic protectionism," they are not within the ambit of the Twenty-first Amendment.[4] 11 F.3d 547, 548, 555–56 (5th Cir.1994).

This cause proceeded on joint exhibits and stipulated facts to a bench trial before this Court on February 20, 2007. Having considered the joint exhibits and stipulations of fact (Clerk's Document No. 10), the parties' briefs on the merits (Clerk's Document Nos. 8 & 9), the pleadings, the evidence admitted and arguments of counsel presented at the bench trial, and the applicable law, the Court finds that the provisions of the Texas Alcoholic Beverage Code at issue impermissibly impinge on the Commerce Clause by mandating differential treatment for in-state and out-of-state wholesalers of alcoholic beverages, and concludes that Southern Wine of Texas's request for declaratory and injunctive relief should be granted.[5]

### Jurisdiction and Venue

This Court has jurisdiction over this action because Southern Wine of Texas challenges the constitutionality of various Texas state statutes under the United States Constitution, and seeks redress for a deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution. *See* 28 U.S.C. §§ 1331, 1343(a)(3). Venue is proper in the Austin Division of the Western District of Texas, because a substantial part of the events or omissions that give rise to Southern Wine of Texas's claims arose within this district and because the TABC main-

---

**1.** As Plaintiffs interests are aligned, for convenience "Southern Wine of Texas" refers to Plaintiffs, collectively. At times the Court refers to Harvey Chaplin, Wayne Chaplin, Paul Chaplin, and Seven Becker, collectively as "Individual Plaintiffs."

**2.** *See* Tex. Alco. Bev.Code Ann. §§ 11.46(a)(11); 61.42(a)(5), (8); 109.53 (West 2007).

**3.** U.S. Const. art. I, § 8, cl. 3 (Commerce Clause); art. IV, § 2 (Privileges and Immunities Clause).

**4.** U.S. Const. amend. XXI, § 2.

**5.** This Memorandum Opinion and Order shall constitute the Court's findings of fact and conclusions of law. *See* Fed.R.Civ.P. 52(a). All findings of fact contained herein that are more appropriately considered conclusions of law are to be so deemed. Likewise, any conclusion of law more appropriately considered a finding of fact shall be so deemed.

tains its offices in the district. *See* 28 U.S.C. § 1391(a), (b).

## Facts

Pursuant to the parties' stipulated facts, Southern Wine and Spirits of America ("Southern Wine of America") is the largest distributor of wine, distilled spirits, and beer in the United States. On May 12, 2006, the Individual Plaintiffs along with Southern Wine of America created Southern Wine of Texas, a Texas domestic for-profit corporation, for the purpose of operating as a wholesaler and distributor of alcoholic beverages in Texas. Southern Wine of Texas is a wholly owned subsidiary of Southern Wine of America. On June 27, 2006, Southern Wine of Texas applied to the TABC for the primary permit and licenses necessary to operate as a wholesaler, general distributor, and importer of alcoholic beverages in Texas-specifically a Wholesaler's Permit, a General Distributor's License, and an Importer's License.[6] If Southern Wine of Texas obtains the permit and licenses necessary to do business in Texas, it intends to operate facilities physically located in Texas. By letter dated August 31, 2006, the TABC refused Southern Wine of Texas's Application for the sole reason that Southern Wine of Texas is ineligible for the necessary permit and licenses based on Texas's one-year durational residency and citizenship statutes. *See* Tex. Alco. Bev.Code Ann. §§ 11.46(a)(11); 61.42(a)(5), (8); 109.53 (West 2007); *see also* Tex. Alco. Bev.Code Ann. § 6.03 (West 2007) (statement of public policy for citizenship requirements). The parties agree that Texas's durational residency laws treat nonresidents engaged in interstate commerce less favorably than Texas residents engaged in intrastate commerce. By its action, Southern Wine of Texas seeks to prohibit the TABC from enforcing the one-year durational residency and citizenship statutes against it and to compel the TABC to review and process Southern Wine of Texas's Application on an equal footing with similarly situated Texas-resident applicants under other relevant provisions of the Texas Alcoholic Beverage Code.

## Texas's one-year durational residency and citizenship statutes

Texas citizenship is a statutory requirement for alcoholic-beverage permit holders and licensees. "No person who has not been a citizen of Texas for a period of one year immediately preceding the filing of his application therefore shall be eligible to receive a permit under [the Texas Alcoholic Beverage Code]." *See* Tex. Alco. Bev. Code Ann. § 109.53 (West 2007). The TABC, in its discretion, may refuse to issue a Wholesaler's Permit with or without a hearing if it has reasonable grounds to believe that the applicant has not been a Texas citizen for a period of one year immediately preceding the filing of an application. *See* Tex. Alco. Bev.Code Ann. § 11.46(a)(11) (West 2007). Regarding a General Distributor's License and an Importer's License, Texas citizenship is mandatory. *See* Tex. Alco. Bev.Code Ann. § 61.42(a)(5) (West 2007).

## Analysis

Recognizing the factual difference between this case and *Cooper*–Southern Wine of Texas seeks a permit and the licenses that would allow it to do business in Texas's *wholesale* market, while the *Cooper* plaintiffs sought a permit and licenses that would allow them to do business in Texas's *retail* market-Southern

---

**6.** *See* Tex. Alco. Bev.Code Ann. §§ 19.01–.05 (West 2007) (Wholesaler's Permit); §§ 64.01–.09 (West 2007) (General Distributor's License); §§ 67.01–.06 (West 2007) (Importer's License).

Wine of Texas contends that *Cooper* unequivocally resolves the issue presented in this case: Texas's one-year durational residency and citizenship statutes do not pass constitutional muster, and the TABC erroneously enforced them against Southern Wine of Texas.

The TABC, in response, concedes that Texas's one-year durational residency and citizenship statutes are facially discriminatory and, therefore, the TABC bears the burden of establishing that the discriminatory statutes advance "a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *New Energy Co. v. Limbach*, 486 U.S. 269, 278, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988); *Cooper*, 11 F.3d at 553. The TABC contends that the Texas statutes are constitutional because: (1) they ensure that those who distribute a dangerous product, alcoholic beverages, have a stake in the welfare of the community in which they operate; (2) they provide a guard against the threats of organized crime; and (3) nonresident absentee owners have less incentive to refrain from practices that, although profitable, could expose the community to harm. *See* Tex. Alco. Bev. Code Ann. § 6.03. The TABC contends that this policy choice, made by the Texas Legislature, is valid and constitutional, and even if the Alcoholic Beverage Code provisions violate the Commerce Clause, Texas's interest in ensuring that alcoholic beverage wholesalers and distributors have a stake in the welfare of the community in which they operate is within Texas's core powers under the Twenty-first Amendment.[7]

■ The Twenty-first Amendment provides that, "[t]he transportation or importation into any State . . . for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const. amend. XXI, § 2. In determining whether a state regulation is within the ambit of the Twenty-first Amendment, "[t]he chief question is whether the interests implicated by a State's regulation 'are so closely related to the powers reserved by the Twenty-first Amendment that the regulation may prevail, notwithstanding that its requirements directly conflict with express federal policies.'" *Cooper*, 11 F.3d at 555 (quoting *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 714, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984)). As the *Cooper* court noted,

> [T]he central purpose of the [Twenty-first] Amendment was not to empower States to favor local liquor industries by erecting barriers to competition. It is also beyond doubt that the Commerce Clause itself furthers strong federal interests in preventing economic Balkanization.

*Id.* (quoting *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 270, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984)). Further, although courts recognize the need "to combat the perceived evils of an unrestricted traffic in alcoholic beverages" as a permissible if vague purpose of the Twenty-first Amendment, "laws that constitute mere economic protectionism are not entitled to the same deference." *Id.* The *Cooper* court found the

> statutory barrier Texas has erected against non-residents who wish to obtain mixed beverage permits results in shielding the State's operators from the rigors of outside competition. This rule subjects such laws to the Commerce Clause's insistence on nondiscrimination. And contrary to Defendants' assertions, the state's interest in facilitating background checks of permit applicants by

---

7. U.S. Const. amend. XXI, § 2.

discriminating against nonresidents is not within the 'core concerns' of the Twenty-first Amendment.

11 F.3d at 555.

This Court finds that despite the fact that *Cooper* addressed Texas's durational residency and citizenship statutes regarding mixed-beverage retail permits and licenses, the holding and reasoning in *Cooper* apply with equal force to the facts in this cause. Texas, by imposing a mandatory one-year residency and citizenship requirement, has erected a statutory barrier against nonresidents who wish to obtain wholesale, distributor, and importer permits and licenses, which shields Texas-resident wholesalers and distributors from the rigors of outside competition. *See id.*

 "Time and again [the Supreme Court] has held that, in all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Granholm v. Heald,* 544 U.S. 460, 472, 125 S.Ct. 1885, 161 L.Ed.2d 796 (2005). To survive Commerce Clause scrutiny, a state must produce concrete evidence that discrimination against interstate commerce is the state's only effective means of advancing a legitimate local policy:

> Our Commerce Clause demands more than mere speculation to support discrimination against out-of-state goods. The burden is on the state to show that the discrimination is demonstrably justified. The [Supreme] Court has upheld state regulations that discriminate against interstate commerce only after finding, based on concrete record evidence, that a state's nondiscriminatory alternatives will prove workable.

*Id.* at 492–93, 125 S.Ct. 1885 (internal citations and quotations omitted).

The *Cooper* court considered an earlier version of the Texas Alcoholic Beverage Code that mandated three years of Texas residency before qualification to hold various classes of alcoholic-beverage permits. Effective September 1, 1993, the Texas Legislature amended the code to provide the current one-year residency requirement.[8] In so doing, the legislature set forth its rationale for maintaining a residency requirement. *See* Tex. Alco. Bev. Code Ann. § 6.03 (West 2007). The legislature did little more than recite the history of the alcoholic-beverage industry and conclude that it was "desirable to retain a one-year residency requirement . . . ." *Id.* § 6.03(g). The TABC argues that some residency requirement is necessary ensure that those who distribute a dangerous product, alcohol, have a stake in the welfare of the community in which they operate.

This Court finds the Texas Legislature's reduction of the residency period neither significant nor persuasive. The Court notes that Texas is a large state, roughly the size of France. The TABC has failed to show how a liquor wholesaler in Chicago, Illinois, that sells to a customer in Texarkana, Texas, a distance of approximately 682 miles, is more difficult to regulate or police than a wholesaler in El Paso, Texas, selling to the same customer in Texarkana, a distance of approximately 730 miles. The same is true of a wholesaler in Laredo, Texas, selling to a customer in Dalhart, Texas, some 599 miles distant, as opposed to the same Dalhart customer

---

8. *See* Act of May 6, 1977, 65th Leg., R.S., ch. 194, § 1, 1977 Tex. Gen. Laws 391, 391–556, *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 934, §§ 16, 21, 50, 90, & 111, 1993 Tex. Gen. Laws 3950, 3954, 3957, 3967, 3977, & 3987 (current versions at Tex. Alco. Bev. Code Ann. §§ 6.03, 11.46(a)(11), 61.42(a)(5), (8), & 109.53 (West 2007)).

buying from a Denver, Colorado, wholesaler, only about 286 miles away. The examples are endless and reflect the futility of TABC's community-welfare argument. The *Cooper* court considered and rejected this argument, *Cooper,* 11 F.3d at 554, and this Court does likewise. The current statutes' effect on the Commerce Clause is the same as the previous.

■ *Granholm* is particularly significant to the issue at hand. Although *Granholm's* facts differ somewhat from the case now before this Court, both cases force consideration of the intersection of the Commerce Clause and the Twenty-first Amendment. In *Granholm* the state laws at issue allowed differential treatment to in-state and out-of-state shippers of wine. The Supreme Court, although recognizing that states have specific constitutional power granted by the Twenty-first Amendment to regulate alcohol, such power is not absolute, but must be considered in the light of Commerce Clause jurisprudence.

> States have broad power to regulate liquor under § 2 of the Twenty-first Amendment. This power, however, does not allow States to ban, or severely limit, the direct shipment of out-of-state wine while simultaneously authorizing direct shipment by in-state producers. If a State chooses to allow direct shipment of wine, it must do so on even-handed terms. Without demonstrating the need for discrimination, New York and Michigan have enacted regulations that disadvantage out-of-state wine producers. Under our Commerce Clause jurisprudence, these regulations cannot stand.

*Id.* at 493, 125 S.Ct. 1885. Texas has made no more a compelling case for banning out-of-state residents from holding permits and licenses for the wholesaling, distributing, or importing of alcoholic beverages in Texas than New York and Michigan did for restricting the shipment of wine into those states by out-of-state producers.

■ Facially discriminatory statutes, such as those under consideration here, can be constitutionally permissible only if the state fulfills its burden of demonstrating, "under rigorous scrutiny, that it has no other means to advance a legitimate local interest." *C & A Carbone, Inc. v. Town of Clarkstown,* 511 U.S. 383, 392, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994). This the TABC has wholly failed to do.

■ The Court holds that TABC's justification for its discriminatory policy is without evidentiary support or explanation. The one-year durational residency and citizenship statutes fail to pass constitutional muster because the TABC has failed in its burden to prove that no nondiscriminatory alternative means are available to Texas to address the state's interest in ensuring that those who distribute alcoholic beverages have a stake in the welfare of the community in which they operate.[9] *See Cooper,* 11 F.3d at 554–55.

---

9. Similarly, in *Dickerson v. Bailey,* the Fifth Circuit applied the "two-tiered" Commerce Clause test and scrutinized strictly whether Texas's facially discriminatory statutes, which prohibited out-of-state wineries from shipping their products directly to Texas consumers, were tailored to the Twenty-first Amendment's "core concerns." 336 F.3d 388, 406 (5th Cir.2003). In affirming the district court, the *Dickerson* court held that Texas failed to carry its burden "to rescue" its facially discriminatory statutes. *Id.; see also Dickerson v. Bailey,* 212 F.Supp.2d 673, 694–95 (S.D.Tex.2002) (providing exhaustive, detailed, and historical analysis as well as application of two-tier Commerce Clause test to other facially discriminatory Texas statutes appearing in Alcoholic Beverage Code).

*Conclusion*

The Court concludes that Texas's one-year durational residency and citizenship statutes fail Commerce Clause scrutiny under *Granholm* and *Cooper;* contravene the Commerce Clause of the United States Constitution, and are not within the ambit of the Twenty-first Amendment.[10] 544 U.S. at 472, 125 S.Ct. 1885, 11 F.3d at 548. Accordingly, this Court concludes that Southern Wine of Texas is entitled to declaratory and injunctive relief as sought in its complaint.

**IT IS ORDERED** that Plaintiffs Southern Wine and Spirits of Texas, Inc., Harvey Chaplin, Wayne Chaplin, Paul Chaplin, and Seven Becker are entitled to injunctive and declaratory relief.

**IT IS FURTHER ORDERED** that a hearing is set for May 29, 2007, at 3:00 p.m. in Courtroom 1, Second Floor of the United States Courthouse, 200 West 8th Street, Austin, Texas, to determine the nature and form of the remedy in this cause.

---

10. Having determined that the Texas residency and citizenship statutes fail Commerce Clause scrutiny, and that the proffered reasons for the facially discriminatory statutes are not within the ambit of the Twenty-first Amendment, the Court finds it unnecessary and declines to address Southern Wine of Texas's alternative argument that the statutes violate the Privileges and Immunities Clause of the United States Constitution. *See Cooper v. McBeath,* 11 F.3d 547, 555–56 (5th Cir. 1994).