# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 22, 2010

No. 08-10146

Lyle W. Cayce
Clerk

WINE COUNTRY GIFT BASKETS.COM; K&L WINE MERCHANTS;
BEVERAGES & MORE INC; DAVID L TAPP; RONALD L PARRISH;
JEFFREY R DAVIS

> Plaintiffs – Appellants-Cross-Appellees

v.

JOHN T. STEEN, JR., Commissioner of the Texas Alcoholic Beverage
Commission; GAIL MADDEN, Commissioner of the Texas Alcoholic Beverage
Commission; JOSE CUEVAS, JR., Commissioner of the Texas Alcoholic
Beverage Commission

> Defendants - Appellees-Cross-Appellants

ALLEN STEEN, in his official capacity as administrator of the Texas
Alcoholic Beverage Commission

> Defendant – Appellee-Cross-Appellant

GLAZERS WHOLESALE DRUG COMPANY, INC; REPUBLIC BEVERAGE
COMPANY

> Intervenor Defendants – Appellees-Cross-Appellants

Appeals from the United States District Court
for the Northern District of Texas, Dallas

ON PETITION FOR REHEARING

No. 08-10146

Before JOLLY, PRADO, and SOUTHWICK, Circuit Judges.

Leslie H. Southwick, Circuit Judge:

Appellants' Petition for En Banc Review is DENIED. We withdraw the prior panel opinion, issued on January 26, 2010, and substitute the following.

This case primarily concerns a Texas law that allows alcohol retailers to ship to the door of their local consumers. Out-of-Texas wine retailers claim that the dormant Commerce Clause requires they be given a supposedly reciprocal right to make direct shipments to any Texas consumer. The district court partly accepted their argument. We hold that the statutes do not run afoul of the dormant Commerce Clause. We VACATE and REMAND for entry of judgment.

## FACTUAL AND LEGAL BACKGROUND

There were several parties to this case, but they can be grouped easily. One plaintiff, Siesta Village Market LLC, who is a Florida wine retailer, has dismissed its appeal. Another, Wine Country Gift Baskets.com, is a California wine retailer. Wine Country's appellate brief describes the plaintiffs, present and past, as "a group of out-of-state wine retailers and Texas wine consumers." We refer to the plaintiffs collectively as "Wine Country."

Suit was filed by Siesta Village and a few Texas wine consumers on March 31, 2006, in the Dallas Division of the U.S. District Court for the Northern District of Texas. A nearly identical suit was filed by Wine Country, two other California retailers, and a few named Texas consumers in the Fort Worth Division. The suits were consolidated in the Dallas Division. The wine retailers located outside of Texas wish to ship wine directly to Texas consumers.

Defendants are Alan Steen, the Administrator of the Texas Alcoholic Beverage Commission, and three Commission members sued in their official capacities. They enforce the Texas Alcoholic Beverage Code ("TABC"). We will refer to the various Defendants as "the State" or "Texas."

2

No. 08-10146

Two Texas alcoholic beverage wholesalers intervened.  These companies are Glazer Wholesale Drug Company, Inc., and Republic Beverage Co.

As do many other States, Texas has a three-tier system for regulating sales of alcoholic beverages.  The first tier is the producer, who must sell its product to the second tier, which is a State-licensed wholesaler.  The wholesaler distributes the product to the third tier, consisting of State-licensed retailers.  Consumers purchase from the retailers.  "[S]trict separation between the manufacturing, wholesaling, and retailing levels" of the alcoholic beverage industry must be maintained.  TEX. ALCO. BEV. CODE § 6.03(i).

The challenged Texas laws fall into three principal categories.  Almost all the relevant provisions apply to alcohol generally, though the complaint is from companies whose commercial interest is solely in wine.

First, some laws allow individuals to bring alcoholic beverages into Texas for their own use, known as a "personal import exception," but limit the quantity.  The district court held that this direct-purchase restriction was unconstitutional in part.  "Texas cannot prohibit consumers from purchasing wine from out-of-state retailers who comply with the Code and TABC regulations," the district court held.  *Siesta Vill. Mkt., LLC v. Perry*, 530 F. Supp. 2d 848, 868 (N.D. Tex. 2008).  It ordered Texas to allow out-of-state retailers to receive Texas-issued retailer permits.  Therefore, any consumer who bought wine from an out-of-state holder of a Texas permit would not be subject to the quantity limit when entering the State with the beverages, though the limit for importing would apply to the same person's excessive purchases from out-of-state retailers that did not have Texas permits.

Second, and at the heart of this case, some of the laws allow in-state retailers to deliver alcoholic beverages to their customers within designated local areas, but forbid out-of-state retailers from delivering or shipping alcoholic

3

beverages to customers anywhere in Texas.[1] Retailers may use common carriers licensed under the TABC, which include such companies as FedEx. Just before summary judgment motions were filed in the consolidated suits, the Texas legislature amended the prior law which had allowed holders of package store permits or wine-only package store permits to ship their beverages statewide. TEX. ALCO. BEV. CODE § 22.03 (Vernon 2006) (amended Sept. 1, 2007). The amendment drew in the boundaries of the area of permissible shipment from the entire State to basically the county in which the retailer has a store. *Id.* §§ 22.03 & 24.03 (Vernon 2009). The district court held that the statutes discriminated against Wine Country and granted relief.

Third, the suit challenged requirements that the holders of TABC retailer permits have been Texas citizens for one year. The decision in an earlier case declared those provisions unconstitutional insofar as they applied to wholesalers. *S.Wine & Spirits of Tex., Inc. v. Steen*, 486 F.Supp. 2d 626, 633 (W.D. Tex. 2007). The district court in the present case declared the requirements unconstitutional as applied to retailers. The State does not appeal the voiding of the requirement and advised the district court that it will not enforce the citizenship rule.

The parties agreed on a preliminary injunction blocking enforcement of certain provisions for the duration of the lawsuit. On summary judgment, the district court declared twenty-three TABC provisions to be unconstitutional. *Siesta Vill. Mkt.*, 530 F. Supp. 2d at 873.

The district court did not, however, provide the remedy Wine Country wanted. The court decided that other provisions of the TABC, though clearly regulating only in-state retailers, should be applied to out-of-state retailers. Thus, Wine Country had a right to make direct shipments to Texas consumers,

---

[1] Although the statutes create some special permits for retailers selling only wine, the statutes allowing local delivery apply to retailers selling only wine and also to full-service package store permit holders. TEX. ALCO. BEV. CODE §§ 22.03(a), 24.03.

4

No. 08-10146

but it was required to obtain a Texas retailer permit and purchase all wine shipped to Texas consumers from Texas-licensed wholesalers. Such a "victory" was, if not pyrrhic, apparently of no benefit.[2]

Wine Country's dissatisfaction is evident from the fact it was the first to appeal, thereby becoming the Appellant despite the general success of its arguments. It claimed error in the remedy. The State cross-appealed to argue that its statutes do not violate the dormant Commerce Clause. Siesta Village, the named plaintiff in one of the two consolidated cases, initially was an Appellant but has since dismissed its appeal.

## DISCUSSION

The grant of a motion for summary judgment is reviewed *de novo*. *Pasant v. Jackson Nat'l Life Ins. Co.*, 52 F.3d 94, 96 (5th Cir. 1995). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2).

This appeal almost exclusively concerns questions of law.

Wine Country convinced the district court that numerous TABC provisions violated the dormant Commerce Clause. Wine Country's arguments as the Appellant center on the remedy imposed by the district court. Because we set aside the invalidation of the statutory provisions, issues about the remedial relief implementing the invalidation become moot. We thus do not discuss Wine Country's arguments on the remedy.

The State of Texas as Cross-Appellant does not contest the district court's invalidation of the requirement that retailers establish Texas citizenship. That

---

[2] The Second Circuit found it operationally absurd for out-of-state retailers to purchase inventory from in-state wholesalers, have it delivered to the retailers in some fashion, then shipped back to in-state consumers. *Arnold's Wines, Inc. v. Boyle,* 571 F.3d 185, 192 n.3 (2d Cir. 2009). Wine Country also found the requirement to be dispiriting.

part of the judgment was not included in any notice of appeal and therefore has not been brought to us for reversal or affirmance.

Texas vigorously does contest the holding that the dormant Commerce Clause interfered with what Texas considers to be a right granted by the Twenty-first Amendment to favor in-state retailers in some respects.

Texas also argues that the direct shipping laws are justified by legitimate state interests. It alleges valid local public interests exist and the law has only incidental effects on interstate commerce. Its policy justifications include the State's need to access retail sites for inspection and enforcement, which can uncover illegal activities – specifically regarding alcohol or more generally for money laundering – and the State's goals of promoting temperance, insuring tax collections, and assuring the separation between the three tiers. We do not reach the policy justifications, as our reversal is for other reasons.

The last section in the Texas brief explains its embrace of the remedy that Wine Country rejects. There is no need to review those arguments.

We discuss only the cross-appeal arguments presented by Texas. First, we will examine closely the United States Supreme Court opinion that spoke strongly and supportively about the three-tier system for distribution of alcohol. We then look at what three subsequent opinions from other courts have said about it. We then briefly review the district court's decision, and finally we apply our analysis to it.

*A. The Three-Tier System and* Granholm

Intoxicating liquor is the only consumer product identified in the Constitution. Only its regulation by States is given explicit warrant.

> The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

U.S. CONST. amend. XXI, § 2.  The goals of "promoting temperance, ensuring orderly market conditions, and raising revenue" are met through regulation of the production and distribution of alcoholic beverages.  *North Dakota v. United States,* 495 U.S. 423, 432 (1990) (plurality opinion).  The understanding of a State's power under the Twenty-first Amendment may have changed since the 1933 ratification, but we need not review seventy-five years of history.  Instead, we rely primarily on the latest Supreme Court explanation.

The basic point Texas makes on appeal is that the three-tier system allows certain kinds of distinctions and particularly allows distinctions between in-state and out-of-state retailers.  Further, allowing Texas-licensed retailers to make their sales in certain ways, namely, by delivery, and prohibiting out-of-state retailers from doing anything at all, is said to be authorized by controlling interpretations of the Twenty-first Amendment.

We start where Texas urges us to start, and where the district court did, by examining the most recent Supreme Court discussion of the interplay between a State's authority to regulate alcohol and the dormant Commerce Clause.  *See Granholm v. Heald*, 544 U.S. 460 (2005).  The Court reaffirmed the principle that, despite what might appear to be absolute authority granted to States by the Twenty-first Amendment to regulate alcohol, the anti-discrimination principles of the dormant Commerce Clause nonetheless place some restrictions on the States.

The Court said that "in all but the narrowest circumstances, state laws violate the Commerce Clause if they mandate 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'" *Id*. at 472 (quoting *Ore. Waste Sys., Inc. v. Dep't of Envtl. Quality of Ore.*, 511 U.S. 93, 99 (1994)).  "State laws that discriminate against interstate commerce face 'a virtually *per se* rule of invalidity.'"  *Id*. at 476 (quoting *Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978)).

No. 08-10146

The *Granholm* Court invalidated two States' "direct shipping" laws allowing in-state wineries to ship wine they produced directly to consumers, but barring out-of-state wineries from doing the same. It found the "discriminatory character" of Michigan's prohibition "obvious," as that State's laws prohibited any shipment from out-of-state wineries, while allowing in-state wineries to ship after obtaining a permit. *Id.* at 473. New York's scheme was more complicated, allowing out-of-state wineries to ship to in-state consumers if the wineries established a physical presence in the State and became part of New York's three-tier distribution system. The Court nonetheless found New York's rules discriminatory, noting that the rules clearly gave "preferential terms" to in-state wineries, which qualified for a simpler permit, did not have to participate in the three-tier system, and could ship wine directly from the site of its production. *Id.* at 474. Both States' laws, then, dealt with producers.

At least as to producers, the Court held that the "Amendment does not supersede other provisions of the Constitution and, in particular, does not displace the rule that States may not give a discriminatory preference to their own producers." *Id.* at 486.

Once finding the laws discriminatory, the Court examined whether they might be saved by a tenet of the dormant Commerce Clause that exempts laws that "'advance[] a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.'" *Id.* at 489 (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 278 (1988)). Obtaining such an exemption requires the "clearest showing" that the law is the only adequate means of serving the State's legitimate purpose. *Id.* at 490 (quoting *C&A Carbone, Inc. v. Clarkstown*, 511 U.S. 383, 393 (1994)). The States claimed two purposes – prevention of underage drinking and the need for taxes. *Id.* at 489. The Court found that neither had sufficient evidentiary support to save those States' laws. *Id.* at 490-92. We do not discuss this point because we determine that the Texas

8

provisions are constitutional and do not need to be saved.

A decision by this court foreshadowed *Granholm*. In it, we struck down Texas laws that allowed Texas wineries to ship directly to consumers and thus bypass going first to a wholesaler, but these laws prohibited out-of-state wineries from doing the same. *Dickerson v. Bailey*, 336 F.3d 388, 406-07 (5th Cir. 2003). The Texas legislature responded to *Dickerson* by authorizing wineries wherever located to ship directly to Texas consumers once they were issued the appropriate permit. TEX. ALCO. BEV. CODE §§ 54.01-.12.

We disagree with Wine Country that *Dickerson* answers today's questions. That precedent, as did *Granholm*, concerned wineries, *i.e.*, the producers of the product traveling in commerce. The producers in a three-tier system often are not located in the State in which the sales occur. The traditional three-tier system, seen as one that funnels the product, *Granholm*, 544 U.S. at 489, has an opening at the top available to all. The wholesalers and retailers, though, are often required by a State's law to be within that State. The distinction is seen in Texas law. It allows wineries themselves, located for example in California or Florida as are the retailer plaintiffs, to ship directly to Texas consumers.

Texas argues that the following language in *Granholm* certifies the constitutionality of the three-tier system that most States use, and is the lens through which the concept of discrimination needs to be seen:

> The States argue that any decision invalidating their direct-shipment laws would call into question the constitutionality of the three-tier system. This does not follow from our holding. "The Twenty-first Amendment grants the States virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system." *Cal. Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 110 (1980). A State which chooses to ban the sale and consumption of alcohol altogether could bar its importation; and, as our history shows, it would have to do so to make its laws effective. States may also assume direct control of liquor distribution through state-run

No. 08-10146

> outlets or funnel sales through the three-tier system. We have previously recognized that the three-tier system itself is "unquestionably legitimate." *North Dakota v. United States*, 495 U.S. at 432; *see also id.* at 447 (Scalia, J., concurring in judgment) ("The Twenty-first Amendment . . . empowers North Dakota to require that all liquor sold for use in the State be purchased from a licensed in-state wholesaler"). State policies are protected under the Twenty-first Amendment when they treat liquor produced out of state the same as its domestic equivalent. The instant cases, in contrast, involve straightforward attempts to discriminate in favor of local producers.

*Id.* at 488-89 (citations reformatted). That language may be *dicta*. If so, it is compelling *dicta*. What we make of that language, and its ability to protect these Texas statutes from Wine Country's dormant Commerce Clause arguments, is the next part of our analysis.

B. *Other Courts'* Granholm *Analysis*

Granholm dealt specifically with state laws treating in-state and out-of-state producers of alcohol differently. This present appeal involves retailers. Since *Granholm*, other decisions from outside this Circuit have addressed that precedent's applicability to retailers who wish to ship wine into other States. We will discuss the three that are the most relevant.[3]

In the earliest decision, some Virginia consumers and a few out-of-state wineries challenged a Virginia statute that limited the amount of alcohol that consumers could personally carry into the State for their own use. *Brooks v. Vassar*, 462 F.3d 341, 349 (4th Cir. 2006). The plaintiffs' theory was that the provision was unconstitutional because consumers could purchase an unlimited amount of wine from in-state sources but only limited amounts out-of-state for their personal importation into Virginia.

---

[3] A fourth decision analyzing *Granholm* was recently released, but we find nothing in it to affect our reasoning. *Family Winemakers of Cal. v. Jenkins,* 592 F.3d 1, 20-21 (1st Cir. 2010) (state law granting distribution rights to "small" wineries was held to discriminate in favor of in-state wineries, all of whom were "small").

10

No. 08-10146

The opinion for the court held that plaintiffs' effort to compare in-state retailers to out-of-state retailers and then allege they were treated differently was fundamentally a challenge to the three-tier system itself. *Brooks*, 462 F.3d at 352 (Niemeyer, J.).[4]   Because the Supreme Court had described the three-tier system as "unquestionably legitimate," the court held the Virginia statutes to be constitutionally sound. *Id.* (quoting *Granholm*, 511 U.S. at 489).

In another decision, there were challenges to New York statutes that are analogous to those here. New York law permitted an in-state alcoholic beverage retailer to deliver directly to consumers' residences in New York, using the retailer's vehicles or by using vehicles of a transportation company licensed by the State's liquor authority; out-of-state retailers did not have comparable rights. *Arnold's Wines, Inc. v. Boyle*, 571 F.3d 185, 188 (2d Cir. 2009).

The Second Circuit started with a recognition that the Twenty-first Amendment does not authorize all alcohol regulation. Any discrimination between in-state and out-of-state alcohol products or producers must reasonably further a legitimate state interest "that cannot adequately be served by reasonable nondiscriminatory alternatives." *Id.* at 189 (citation omitted). The court's focus on "products or producers" is the central debate: how much further, if at all, beyond products and producers do the anti-discrimination principles go?

The Second Circuit held products and producers are the limit. It described plaintiffs' arguments as simplistic analogies to the *Granholm*-identified discrimination. A State's making distinctions among in-state and out-of-state retailers, and even requiring wholesalers and retailers to be present in and licensed by New York, were fundamental components of the three-tier system authorized in *Granholm*. *Id.* at 190.

---

[4] Judge Niemeyer wrote for the court, but a second judge concurred only in the judgment with respect to this part of the opinion, while the third judge on the panel dissented from that part. This reasoning presumably has limited precedential effect in that Circuit.

11

The court concluded that the New York laws permitting only in-state retailers to ship directly to consumers were in "stark contrast" to the laws struck down in *Granholm*, which "created specific exceptions to the states' three-tier systems favoring in-state producers." *Id*. at 191. It found that the production-related discrimination involved in *Granholm* "was exactly the type of economic protectionist policy the Commerce Clause sought to forestall, and where the *Granholm* Court drew the line." *Id*.

The line drawn by the court was between the broad state powers under the Twenty-first Amendment "to regulate the transportation, sale, and use of alcohol within their borders," and any "attempts to discriminate in favor of local products and producers." *Id*. It held New York's laws were evenhanded in their control of "importation and distribution of liquor within the state," and that made the dormant Commerce Clause all but irrelevant. *Id*. at 192.

In the third case, the court considered a Michigan law authorizing some in-state retailers to ship wine directly to consumers, while out-of-state retailers without a physical presence in Michigan could not. *Siesta Vill. Mkt., LLC v. Granholm*, 596 F. Supp. 2d 1035, 1037-38 (E.D. Mich. 2008), *vacated as moot*, Order Dismissing Action, July 17, 2009.[5] The Michigan court limited the effect of the Supreme Court's *Granholm* decision: "While the [*Granholm v.*] *Heald* court did state that the three-tier system was an appropriate use of state power, it did not approve of a system that discriminates against out-of-state interests." *Id*. at 1039. The court found that "regulations creat[ing] an extra burden on out-of-state wine retailers" were not saved by the Twenty-first Amendment. *Id*. The court also held it to be insufficient that out-of-state retailers could comply with Michigan law by establishing a location in the State. The "prohibitive" expense of opening physical stores in multiple States gave a clear advantage to in-state

---

[5] An appeal to the Sixth Circuit was apparently mooted by an intervening change in the Michigan statutes being challenged.

retailers. *Id*. at 1040 (citing *Granholm*, 544 U.S. at 474-75). Accordingly, the court struck down the Michigan laws.

### C. *The District Court's Interpretation*

The district court here considered the Texas "Personal Import Exception," which authorizes individuals to import alcohol for their own use. One section prohibits importation unless authorized. TEX. ALCO. BEV. CODE §107.05. That section is then made inapplicable to Texas residents who import for personal use not more than one quart of liquor, three gallons of wine, or twenty-four twelve-ounce bottles of beer. *Id*. § 107.07. There is no direct limit on how much can be purchased, only on how much can be imported.

These provisions were held by the district court to discriminate against out-of-state retailers because they "prohibit consumers from purchasing wine from out-of-state retailers" in unlimited quantities. *Siesta Vill. Mkt.,* 530 F. Supp. 2d at 868. The remedy was to allow out-of-state retailers to apply for Texas retail permits, even without the retailers' opening a location in the State. Any retailer with a Texas permit and making sales at locations outside of Texas could not be limited in sales volumes when those limits do not apply to Texas permit holders making sales inside Texas.

The district court also held that the Texas local shipping rights were discriminatory. The court held the relevant question to be whether there was discrimination "with respect to access to *in-state markets*," and there could be no exception for *de minimis* levels of discrimination. *Id*. at 864 (emphasis in original). The disability imposed on out-of-state retailers was not a "mere practical consequence" of location, as it might be if Texas permitted only over-the-counter sales of alcohol. Since Texas allowed in-state retailers to ship alcohol, there was no practical reason why out-of-state retailers could not also. *Id*. at 865-66. Shipping was the key, because shipping was as easily done from outside the State as from within.

13

Having found the Texas laws discriminatory, the court turned to the question of whether the State could show legitimate local purposes, not obtainable by nondiscriminatory alternatives, to justify the discrimination. We do not ultimately reach that analysis, so we do not summarize it here.

### D. Dormant Commerce Clause Analysis

We first analyze the provisions that allow an in-state retailer to deliver within its county but bars an out-of-state retailer from shipping into Texas. Texas argues that distinguishing between retailers in this way is a fundamental part of the constitutional three-tier system, which is "unquestionably legitimate." *Granholm*, 544 U.S. at 488-89.

To the contrary, Wine Country focuses on the *Granholm* prohibition on a state's liquor laws discriminating against out-of-state interests. Wine Country acknowledges that the Court limited its holding to discrimination benefitting alcohol on the basis of its in-state production status, but Wine Country argues that makes sense as that was the *Granholm* dispute. Texas argues the *Granholm* failure to mention retailers was significant, as distinctions favoring in-state retailers are inherently part of the three-tier system.

We first note what is not in issue. The discrimination that *Granholm* invalidated was a State's allowing its wineries to ship directly to consumers but prohibiting out-of-state wineries from doing so. Texas grants in-state and out-of-state wineries the same rights. TEX. ALCO. BEV. CODE §§ 54.01-54.12.

Such discrimination – among producers – is not the question today. When analyzing what else is invalid under the Supreme Court's *Granholm* reasoning, we find direction in a source for some of the Court's language. The Court quoted a 1986 precedent that North Dakota's three-tier system was "unquestionably legitimate." *Granholm*, 544 U.S. at 489 (quoting *North Dakota v. United States*, 495 U.S. 423, 432 (1986)). North Dakota's system was similar to that in Texas, in which producers sell to state-licensed wholesalers, who sell to state-licensed

retailers. *North Dakota,* 495 U.S. at 428. That sort of system has been given constitutional approval. The discrimination that would be questionable, then, is that which is not inherent in the three-tier system itself. If *Granholm*'s legitimizing of the tiers is to have meaning, it must at least mean that. The legitimizing is thus a caveat to the statement that the Commerce Clause is violated if state law authorizes "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Granholm*, 544 U.S. at 472 (internal quotation marks and citation omitted).

Therefore, the foundation on which we build is that Texas may have a three-tier system. That system authorizes retailers with locations within the State to acquire Texas permits if they meet certain eligibility requirements. Those retailers must purchase their alcoholic beverages from Texas-licensed wholesalers, who in turn purchase from producers. Each tier is authorized by Texas law and approved by the Twenty-first Amendment – so says *Granholm* – to do what producers, wholesalers, and retailers do.[6]

Wine Country argues that the three tiers have tumbled because Texas has permitted retailers to make home deliveries within a confined range. At least in part, this must be an argument that Texas retailers are being allowed to act in ways that are unacceptable for retailers in a constitutionally sound system. The defect is one of discrimination: Texas retailers are doing what a retailer in California or Florida physically and practically can do, which is to use a licensed shipper to deliver to a Texas consumer, but legally cannot do.

To address the argument, it would be useful to know what specific actions allegedly caused the retailers to stop being *Granholm*-approved, traditional

---

[6] Wine Country at oral argument emphasized a provision of Texas law allowing Texas retailers to receive direct shipments from Texas wineries, bypassing the wholesaler tier. *See* TEX. ALCO. BEV. CODE § 110.053. This provision is not on the list of those enjoined by the district court and is not a subject of this appeal. *Siesta Vill Mkt..*, 530 F. Supp. 2d at 851.

third-tier retailers.  If Texas allowed a retailer to carry the beverages to a customer's vehicle parked in its lot, or across the street, would that be a problem?  If a retailer's own delivery trucks traveled to the customer, is that discrimination?  Does discrimination not begin until a retailer uses a licensed shipper?  Relevant to the answer, Texas has not defended on the basis that retailers are just permitted to serve their usual local markets in enhanced, customer-friendly ways.  Indeed, at oral argument, the Texas Solicitor General said that the geographical limits to local deliveries were irrelevant.  The prior state-wide delivery version of the provision would be constitutional under that argument.  We need not and do not reach the broader definitional issue.

In analyzing "retailing" for Twenty-first Amendment purposes, we find a useful warning in concurring Judge Calabresi's observations in *Arnold's Wines*. He found a tension between the original (likely) meaning of the Twenty-first Amendment and the current interpretation, a change largely the result of Supreme Court reaction to the changing economic and social world since the adoption of the Amendment.  *Arnold's Wines*, 571 F.3d at 198-201 (Calabresi, J., concurring).  He also concluded that uncertainty existed about the direction the Supreme Court will take with its developing interpretation of the Amendment. Yet he agreed that the majority applied the best understanding of its current meaning.  The best understanding is also what we seek.

We pull back from any effort to define the reach of a traditional three-tier retailer.  Instead, we resolve whether what Texas has allowed here is so substantially different from what retailing must include as not to be third-tier retailing at all.  Because of *Granholm* and its approval of three-tier systems, we know that Texas may authorize its in-state, permit-holding retailers to make sales and may prohibit out-of-state retailers from doing the same.  Such an authorization therefore is not discrimination in *Granholm* terms.  The rights of retailers at a minimum would include making over-the-counter sales.  Wine

No. 08-10146

Country's argument implies that is where *Granholm*-approved retailing ends and where the potential for discrimination begins. We disagree. Texas has adjusted its controls over retailers by allowing alcoholic beverage sales to customers other than those who walk into a store. Still, sales are being made to proximate consumers, not those distant to the store. Retailers are acting as retailers and making what conceptually are local deliveries.

Our read of *Granholm* is that the Twenty-first Amendment still gives each State quite broad discretion to regulate alcoholic beverages. The dormant Commerce Clause applies, but it applies differently than it does to products whose regulation is not authorized by a specific constitutional amendment. Regulating alcoholic beverage retailing is largely a State's prerogative.

*Granholm* prohibited discrimination against out-of-state *products* or *producers*. Texas has not tripped over that bar by allowing in-state *retailer* deliveries. Yet it also has not discriminated among retailers. Wine Country is not similarly situated to Texas retailers and cannot make a logical argument of discrimination. The illogic is shown by the fact that the remedy being sought in this case – allowing out-of-state retailers to ship anywhere in Texas because local retailers can deliver within their counties – would grant out-of-state retailers dramatically greater rights than Texas ones.

Wine Country argues that Texas has created the need for that outsized remedy through its discrimination, and Texas can eliminate local unfairness by broadening the rights granted its own retailers. The problem with the argument is that it ignores the Twenty-first Amendment. When analyzing whether a State's alcoholic beverage regulation discriminates under the dormant Commerce Clause, a beginning premise is that wholesalers and retailers may be required to be within the State. Starting at that point, we see no discrimination in the Texas law.

We view local deliveries as a constitutionally benign incident of an

17

acceptable three-tier system. That view is consistent with the unquestioning reference by the Supreme Court in *Granholm* to a Michigan statute that authorized retailers to make home deliveries under certain conditions. *Granholm*, 544 U.S. at 469.[7] A State's granting this authority to retailers is neither recent nor unique. Texas has permitted direct delivery and carrier shipment by in-state retailers at least since 1977. TEX. ALCO. BEV. CODE § 22.03 (Vernon 2006, adopted Sept. 1, 1977). Some other States also allow delivery by in-state retailers.[8] A State's right to authorize a variety of retail practices for alcoholic beverages free of dormant Commerce Clause barriers may not be limitless. Yet it seems to us that implementing consumer-friendly practices for in-state retailing of these products often has more to do with changing economic realities than with the Constitution.

On rehearing, Wine Country argues that we disregarded the methodology required to analyze this kind of claim. When statutes that regulate alcohol facially discriminate against out-of-state interests, generally we ask two questions: (1) do the statutes violate the Commerce Clause and, (2) if so, are they saved by Section 2 of the Twenty-First Amendment? *Dickerson*, 336 F.3d at 395-96 (citing *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 578-79, 584-85 (1986)). After *Dickerson*, though, the Supreme Court reiterated the legitimacy of the three-tier system. *Granholm*, 544 U.S. at 489. The present appeal challenged an inherent aspect of that system. Because *Granholm* told us that the three-tiers are legitimate under the Twenty-first

---

[7] Michigan has subsequently repealed this provision and banned all direct shipment by retailers, perhaps in response to the ruling of the district court in *Siesta Vill. Mkt.*, 596 F. Supp. 2d 1035. *See* MICH. COMP. LAWS ANN. § 436.1203(2) (amend. eff. March 31, 2009).

[8] *See, e.g.*, COLO. REV. STAT. ANN. § 12-47-407(3) & § 408(3); FLA. STAT. ANN. § 561.57(1); 235 ILL. COMP. STAT. ANN. § 5/5-1(d); IND. CODE ANN. § 7.1-3-9-9; IOWA ADMIN. CODE r. 185-17.1(1); ME. REV. STAT. ANN. tit. 28-A, § 2077(2) & (3); MD. CODE ANN. art. 2B, § 2-301(b)(1); MASS. GEN. LAWS ANN. ch. 138, § 22; MINN. R. 7515.0580; N.J. ADMIN. CODE § 13:2-20.3; N.Y. COMP. CODES R. & REGS. tit. 9, § 67.1; 02-040-016 R.I. CODE R. § 4(10).

No. 08-10146

Amendment, we did not need to take the steps of *Dickerson* first. In effect, *Granholm* already worked out the answer to the analysis.

Also alleged is that we disregarded *Cooper v. McBeath*, 11 F.3d 547 (5th Cir. 1994). There we invalidated a requirement that certain alcohol permits could be issued only if the recipient had been a Texas resident for one year. *Id.* at 555. Our case concerns physical location of businesses; *Cooper* concerned legal residence of owners. The former is a critical component of the three-tier system, while the latter is not involved. The opinions are consistent.

We conclude that the limited rights Texas has given its state-licensed retailers to make deliveries do not transgress the dormant Commerce Clause.

There is one final issue. We mentioned that the remedy ordered by the district court was to require Texas to issue retailer permits to out-of-state retailers. Such permit holders wherever located could ship directly to Texas residents. Also benefitted by the district court's order were those individuals who wanted to avoid the limit Texas placed on the quantity of alcoholic beverages that could be purchased out-of-state and then be taken into Texas for personal use. TEX. ALCO. BEV. CODE §§ 107.05(a) & 107.07(a). If the person entering Texas could show that the alcohol being transported for personal use was bought from an out-of-state holder of one of the newly-mandated Texas retailer permits, no limit on quantity could be imposed. If the alcohol was not so purchased, the quantity could be limited.

We have held that Texas can require its authorized retailers to sell from locations physically located in Texas. Therefore, the dormant Commerce Clause does not support ordering Texas to issue retail permits for use at out-of-state locations. No other issue about the personal importation limit is meaningfully raised. We leave the provision fully in force.

CONCLUSION

We reverse the district court's judgment invalidating the requirement that

19

only retailers with a physical presence within the State could receive retailer permits or deliver to consumers in the State. The provisions as listed by the district court were Texas Alcoholic Beverage Code sections 22.03, 24.03, 54.12, and 107.07(f). We reinstate those to the extent the district court's judgment nullified them. Our reversal leaves in place the district court's voiding of provisions that retailers be Texas citizens for one year. No challenge to that ruling was brought to us.

Nothing in this opinion precludes the enforcement, as written, of the personal importation exception authorized by Texas Alcoholic Beverage Code sections 107.05(a) and 107.07(a).

In these respects the district court's judgment is VACATED. We REMAND for entry of judgment consistent with this opinion.